## HENRY B. ODIORNE *vs.* ROBERT BACON.

The defendant, in an action of slander for having charged the plaintiff and nis partner with a fraudulent sale of their property to a third person, with an intention to cheat the creditors of the firm, in pursuance of a conspiracy for that purpose between the plaintiff and his partner and the purchaser, having justified the charge, on the ground that it was true; it was held, that evidence of the purchaser's insolvency, at the time of the purchase, was admissible to prove that the sale was fraudulent.

The original papers and record of proceedings in insolvency, deposited in the probate office, and produced by the register of probate, are admissible in evidence equally with certified copies thereof, under *St.* 1838, *c.* 163, § 14.

In an action of slander, for charging the plaintiff with a conspiracy with his partner and another person, to cheat the creditors of the firm by a fraudulent sale to the latter, evidence of the conspiracy having been introduced by the defendant in justification; it was held, that the defendant might then prove, that before the partnership was entered into, the purchaser recommended the plaintiff's partner to the witness, as "a safe and suitable person to sell goods to on credit," and that the witness sold goods accordingly to the firm, on that recommendation, for which he had not been paid.

If the opinion of a judge upon evidence is liable to exception, the objection should be stated at the trial, and all the facts having any bearing upon it inserted in the report.

Where a witness, who is called to testify to what was said by a witness on a former occasion, makes a statement thereof from his recollection, assisted by a reference to his minutes taken at the time, it is not the right of the adverse party, on cross examination, to require him to state again in detail, without referring to his minutes, what was said by the witness.

A sale of goods, for the purpose of preventing them from being attached by the creditors of the vendor, is a fraud in law, which, in an action of slander, will justify the application of the epithets "cheat" and "swindler" to the parties concerned in it.

The terms "cheat" and "swindler" are not actionable, unless spoken of the plaintiff in relation to his business.

THIS was an action on the case for slander, tried in this court before *Metcalf,* J., and by him reported for the consideration of the whole court, after a verdict therein for the defendant. The plaintiff alleged, in his declaration, and it was in evidence, that he was a calico printer, carrying on business at the Mystic print works, in Medford, in partnership with Edward H. Ashcroft, and that on the 9th of March, 1846, he sold his interest in the establishment to one Alvah Kimball. It was in evidence, also, that in the February preceding, Ashcroft had sold his interest in the concern to Kimball.

16 *

The declaration contained a great number of counts, (upwards of forty,) all but nine of which were waived at the trial. In some of the counts, which were relied upon by the plaintiff, it was alleged, that the defendant, in the presence and hearing of certain persons designated by name, some of whom were workmen employed by the plaintiff and his partner, and others were their creditors, declared, at different times, of and concerning the plaintiff and his business, that he and his partner were bankrupt and insolvent, and would not and could not pay their debts; that the workmen need not work for them any longer, for they could not and would not get their pay; that the concern was rotten. In others of the counts relied on, it was alleged, that the defendant charged the plaintiff with being a swindler, a scoundrel, insolvent, unable to pay his just debts; and that he intended to cheat his creditors; but these counts contained no averment, that the words were spoken of the plaintiff in his business. In one of the counts, it was alleged, that the defendant said of the plaintiff: " He is a robber and worse than a highway robber; that sale is a false sale, intended to cheat their creditors; they have conspired to cheat the creditors of Ashcroft and company."

The defendant pleaded the general issue, with a specification of defence, denying malice and justifying such of the words as the plaintiff should prove to have been spoken; alleging the bad character of the plaintiff, and his want of credit; averring a conspiracy between Ashcroft and the plaintiff and Kimball, to cheat certain creditors (naming them); and setting forth that the sale to Kimball was fraudulent.

The plaintiff having given evidence of the speaking of the words, the defendant proceeded with his defence as specified, and in order to prove the insolvency of Kimball, offered the testimony of the register of probate for the county of Suffolk, with the original papers and the record of the proceedings in insolvency, in two applications of Kimball, as an insolvent debtor, to the judge of probate, the first on the 21st of February, 1846, and the other on the 1st of April, 1847.

The plaintiff objected to the introduction of this evidence,

on the ground, that the proceedings in insolvency were a mat‐ ter *inter alios,* to which he was not a party. He also objected to the introduction of the original papers and record to prove the insolvency of Kimball, on the ground, that by the statute of 1838, *c.* 163, § 14, attested copies of these papers were the only proper evidence. Both these objections were overruled, and the evidence admitted.

Before this evidence was admitted, Ashcroft, who had been called as a witness by the plaintiff, had testified, that when he sold his interest in the partnership concern to Kimball, the latter told him that he was insolvent.

The defendant introduced a witness, who testified, that in September, 1845, about two months before Ashcroft and the plaintiff went into partnership, Kimball recommended Ash‐ croft to the witness, as a "safe and suitable person to sell goods to on credit," and that he did sell goods to him on that recommendation, which were charged to the Mystic print works, and had not been paid for. The plaintiff objected to the evidence of any declaration or statement of Kimball, not made in the plaintiff's presence, or shown to have been au‐ thorized by him ; but the objection was overruled, and the evi‐ dence admitted.

The defendant introduced a witness, who had been counsel for the defendant on the trial of an action in which Ashcroft was examined as a witness, who testified, from his minutes, to the evidence given by Ashcroft on that occasion. The wit‐ ness having stated, that he testified from his recollection, as‐ sisted by his minutes, he was asked, on his cross-examination, to state again, in detail, without referring to his minutes, what Ashcroft had testified. But the court ruled, that the witness should not be required to testify in that manner.

The plaintiff's counsel, before the arguments to the jury were commenced, stated that he should not contend, that the sale made by the plaintiff to Kimball was not intended to prevent creditors from attaching the property, and was not fraudulent in law; but that it was made without any fraud‐ ulent intent, and for an honest purpose, namely, to save costs and the sacrifice of the property, and to enable all the creditors to get their pay.

The jury were instructed, that if the sale by the plaintiff to Kimball was made for the purpose of preventing creditors from attaching the property, it was fraudulent in law, and would justify the defendant in applying to it the epithet of cheating and swindling, and in calling the plaintiff a cheat and a swindler; that if the defendant called the plaintiff a robber, in connection with the other words stated, it was for the jury to decide, whether this term was meant, or was understood by the hearers to mean, any thing more than was meant by the former words, and that if it was not so meant or understood, the defendant was not legally liable for using it; that the other reproachful and contumelious words, alleged in the declaration to have been uttered by the defendant of and concerning the plaintiff, were not actionable; that the words, which charged the plaintiff, or the plaintiff and Ashcroft, with being insolvent and unable to pay his or their debts, were actionable, if they were false and malicious; but if they were true when uttered, the defendant would not be liable for damages for speaking them; that Ashcroft's fraudulent conduct, if any, in reference to his creditors or the creditors of the firm, (as to which there was much evidence,) was immaterial, except so far as it might tend to prove, that the plaintiff's sale to Kimball was fraudulent, or that there was a conspiracy, either between the plaintiff and Ashcroft, or between them and Kimball, to defraud the creditors of the plaintiff, or of the firm; that the jury were to decide, upon the whole evidence, whether the plaintiff had proved that the defendant had charged him with a conspiracy to cheat his creditors, and if so, whether the charge had been justified by the defendant as true; that the charge alleged to have been made by the defendant, that the plaintiff intended to cheat his creditors, or that he and Ashcroft intended to cheat their creditors, was not in itself actionable; but if such charge was made, and was actionable, if the jury should be satisfied that the defendant had justified the other charges, they might also consider this charge as justified.

The verdict was to be set aside, and a new trial granted, if on any of the grounds stated above the plaintiff was legally entitled thereto.

*B. F. Butler*, for the plaintiff.

*E. Buttrick*, for the defendant.

The opinion of the court (*Fletcher*, J. not sitting in the cause) was delivered by

WILDE, J.   This is an action of slander, at the trial of which several exceptions were taken to the rulings of the presiding judge, and to the instructions given to the jury.

The first exception was to the admission of the evidence, offered by the defendant, to prove the charge complained of in the first three counts of the declaration, that the plaintiff and his partner were insolvent debtors; and that they had made a fraudulent sale of their property to one Kimball, an insolvent debtor, with the intention to cheat their creditors, in pursuance of a conspiracy for that purpose between them and Kimball.   To prove the insolvency of Kimball, the original papers and the record of the proceedings before the judge of probate on Kimball's two petitions, as an insolvent debtor, were offered as competent evidence of his insolvency, and they were admitted accordingly.   It is objected, that these proceedings were *res inter alios;* that the insolvency of Kimball was an immaterial fact, and if otherwise, that the attested copies of the record should have been produced; such copies being made *primâ facie* evidence of the facts therein stated, by the statute of 1838, *c.* 163, § 14.

Neither of these objections appears to the court to be well founded   The fact of Kimball's insolvency might be material, in determining the question whether the sale to him was *bonâ fide* or fraudulent.   We certainly cannot decide that it was not, for the other evidence as to this question is not reported; but it was such, that the plaintiff's counsel, before the arguments to the jury, stated that he should not contend, that the sale by the plaintiff to Kimball was not intended to prevent creditors from attaching the property sold, and thus in the eye of the law was fraudulent.*   If, then, the insolvency of Kimball was immaterial, the proof of it could not prejudice the plaintiff; for it could have no bearing on any other

---

* See *Kimball* v. *Thompson*, 4 Cush. 441, 446.

question than that of the fraudulent sale. On that question, however, it had some bearing, and so was not immaterial. On no ground, therefore, can this objection be sustained.

So we can have no doubt, that the original record of the proceedings before the judge of probate was competent evidence. The register of probate might have refused to produce the record, but it was produced voluntarily by him ; and certainly the original record, verified by him, is equivalent to a copy thereof attested by the same recording officer. It was therefore competent, as *primâ facie* evidence, although not conclusive, as the plaintiff was not a party to the proceedings. *Brooks* v. *Daniels,* 22 Pick. 498.

Another objection was made to the testimony of a witness called by the defendant, who was allowed to testify as to the acts and declarations of Kimball. This evidence would have been inadmissible, had not previous evidence been given, satisfactory to the presiding judge, of the conspiracy alleged in the defence, between the plaintiff and his partner, Ashcroft, and Kimball, to cheat certain creditors of the partners, by a fraudulent sale of their property. The evidence is not fully reported, but enough is reported to make it appear, that evidence tending to prove such conspiracy had been introduced, and it was on this ground, undoubtedly, that the acts and declarations of Kimball were allowed to be proved ; for the rule of evidence on this point is exceedingly familiar. The insolvency of Kimball, proved by the record, had some tendency to prove a conspiracy to make a fraudulent sale, as already remarked ; and before the evidence objected to was admitted, Ashcroft, who was called as a witness by the plaintiff, testified, that when he sold his interest to Kimball, he was informed by him of his insolvency. Whether this evidence was sufficient to prove Kimball's insolvency, is a question which is not raised by the exceptions.

If the opinion of the judge, presiding at a trial, upon the evidence of a fact, is liable to exception, the objection to the opinion should be distinctly stated at the trial ; and it should appear by the report, that all the facts having any bearing on the objection are therein stated. As this does not appear, it

is not necessary to decide the question, whether the opinion of the presiding judge is liable to exception, on the ground of the insufficiency of the evidence to prove the alleged conspiracy. If, however, the question was required to be decided, it would be difficult, I apprehend, to maintain an exception to the judgment of a judge, upon the weight of evidence to prove a fact relating to the competency of a witness, as in the present case.

Another exception was taken to the ruling of the judge, whereby, as the plaintiff's counsel contend, his right of cross-examination of one of the defendant's witnesses was illegally abridged. The witness was asked by the plaintiff's counsel to state again in detail, without referring to his minutes, what Ashcroft testified at a former trial; and the judge ruled that the witness should not be required so to restate his testimony. No exception to this ruling, in our judgment, can be sustained. The judge had a discretionary power to regulate the examination of witnesses, and his rulings in such cases are not liable to exception.

As to the instructions to the jury, we find nothing to support the exceptions. The jury were instructed, that if they were satisfied, that the sale from the plaintiff to Kimball was made for the purpose of preventing creditors from attaching the property sold, it was fraudulent in law, and warranted the defendant in applying to it the epithets of cheating and swindling. It is objected, that there was no moral fraud proved or admitted; but in relation to the question in this case, there is no distinction between a legal and a moral fraud. We have no doubt, that the instructions to the jury were sufficiently favorable for the plaintiff.

*Exceptions overruled.*