# Power *v.* Overholt, Appellant.

*Wills—Issue devisavit vel non—Insane delusion—Evidence.*

A verdict by a jury upon an issue devisavit vel non, establishing the existence of a controlling insane delusion, was sustained where there was evidence tending to establish that the decedent had given the bulk of her estate by the will sought to be probated to one of two nieces, while laboring under the insane delusion that the other, the contestant, had stolen certain silver articles from her; that she had said that because of such supposed theft the contestant would get nothing else than this silver from her; and that in the will in question the niece was given only the silver which decedent believed she had stolen.

Argued Feb. 7, 1917. Appeal, No. 9, Jan. T., 1917, by defendant, from judgment of C. P. Chester Co., April T., 1916, No. 65, on verdict for plaintiff in an issue devisavit

vel non in case of Emma McClellan Power v. Susan Mc-
Clellan Overholt.    Before BROWN, C. J., MESTREZAT,
STEWART, MOSCHZISKER and WALLING, JJ.   Affirmed.

Feigned issue to determine the validity of a testamen-
tary paper, as the will of a decedent.

The facts appear in the following opinion by HAUSE,
J., sur defendant's motions for a new trial and for judg-
ment n. o. v.:

The verdict of the jury in favor of the plaintiff deter-
mined that a certain paper writing, dated May 31, 1913,
was not the valid will of Miss Thomasine D. Boyer.

The document was attacked on two grounds; first,
that Miss Boyer lacked general mental capacity when it
was executed, and second, that it was the product of an
insane delusion entertained by her toward the plaintiff,
her niece.    The jury announced that their verdict was
based upon the second ground, that concluding that the
testatrix was possessed of general mental capacity.

Defendant's request for binding instructions having
been refused and the verdict having been adverse, we are
now asked to enter judgment notwithstanding the ver-
dict or to grant a new trial—the latter request being
based on the suggestion that the verdict is against the evi-
dence and the weight of the evidence.

It is earnestly contended on behalf of the defendant
that the situation here presented is ruled by McGov-
ran's Est., 185 Pa. 203, and Hemingway's Est., 195 Pa.
291, and that, in the light of those cases, the verdict
should be disregarded and judgment entered accordingly.

When the plaintiff attacked the document in question,
on the ground that it was the product of an insane de-
lusion, she assumed the burden of satisfying the jury not
only that such delusion exists, but that it was present in
the mind of the testatrix when the document was exe-
cuted, and that it, in fact, controlled the disposition of
her property.   In McGovran's Est. (Supra) the contest-
ant wholly failed to show that the feeling entertained by

the testatrix toward the contestant was without foundation either in reason or fact and that it was purely a matter of imagination and in Hemingway's Est. (Supra), conceding that the testatrix was laboring under a delusion when the will was made, there was no testimony from which a jury could properly conclude that the will was the result of the delusion. Alexander's Est., 246 Pa. 58, and Herr's Est., 251 Pa. 223, are, likewise, illustrations of lack of evidence essential to sustain a verdict against a will when challenged on the theory of insane delusions.

"A delusion which will render invalid a will, executed as the direct result of it, is an insane belief or a mere figment of the imagination—a belief in the existence of something which does not exist and which no rational person, in the absence of evidence, would believe to exist": Alexander's Est. (Supra).

Was there, then, in the case before us, sufficient testimony from which, if believed, the jury could properly conclude that there was present in the mind of the testatrix, when the will was made, an insane belief—a belief that no rational person, in the absence of evidence, would entertain, that the plaintiff had, on different occasions prior to the date of the will, stolen articles of personal property from her and was that belief, if it existed, a controlling factor in the attempted disposition of her property to the prejudice of the plaintiff?

The testatrix had made a will in 1904 by which, after some minor bequests, she directed that the residue of her estate should be equally divided between her two nieces— the plaintiff and the defendant and named them as executors. In 1911, she made a codicil to this will, merely changing two small legacies. By the document in controversy, the entire residue of the estate, after making other dispositions substantially as in her former will, is given to the defendant and she is named as sole executor. To the plaintiff are bequeathed "one-half dozen silver teaspoons marked 'M. E. B.,' one-half dozen silver forks

marked 'S. E.,' and all table linen and napkins," and some other small items of personalty.

To sustain the burden assumed by her the plaintiff introduced evidence of the fact that shortly prior to the date of the document in controversy, the testatrix, while at plaintiff's house, charged her with having stolen her pocketbook, whereas she had laid it in her bureau drawer and there found it. She accused her of having stolen a bed cover, whereas she had given it to the plaintiff years before.

In the latter part of June, 1912, she charged the plaintiff with having taken a pair of sleeve buttons from her room at her boarding house in West Chester, while the plaintiff was visiting her there, and when the plaintiff returned to her home in Western Pennsylvania, the testatrix wrote her on June 26, 1912, reiterating the charge, and, after referring to the buttons, said, "No one has any right to anything that belongs to me unless I give it to them, and has anything that belongs to me if not returned soon by express or some safe way will have trouble not profitable when a certain time comes, for I have all my affairs arranged some time ago." On July 10, 1912, she wrote again to the plaintiff on the subject stating that she had not found the buttons, and that she would place her trust in an "All-wise Providence to show to the one who had been guilty of this crime," etc. In April, 1913, the testatrix visited the plaintiff at her home in Brownsville, Pa., taking with her the spoons and forks heretofore referred to. These she gave to the plaintiff and the day following she stoutly asserted that the plaintiff had stolen them—had "snatched them out of her hands."

That there was any foundation for any of these charges is not pretended. That they were utterly without foundation is beyond question. They were mere figments of a mind disordered on a particular subject. There were no facts upon which any sane person could reach such conclusions, nor is it contended that there were any facts or circumstances present upon which such charges could

rest or from which such conclusions could rationally follow.

Almost immediately following the charges with reference to the spoons and forks, the testatrix left the home of the plaintiff and visited the defendant at her home in Scottdale, some two miles distant. While there she expressed a desire to have some changes made in her will. She was taken to the office of B. A. Wirtner, Esq., a member of the Westmoreland County bar; she indicated to him the changes she desired to make and.in the course of their conversation she "remarked that her niece (the plaintiff) hadn't treated her properly. She hadn't treated her the way she thought she ought to be treated." What she had in her mind she did not divulge to the scrivener. A new will—the paper in question—was prepared and executed two or three days following the visit to Wirtner. Later, the testatrix returned to West Chester, and April 15, 1914, took up her home with Mrs. Zaidee T. Leedom. Shortly thereafter, in conversation with Mrs. Leedom, the testatrix told her, in substance, that: "While she (the testatrix) was there (at plaintiff's home) she (plaintiff) had 'stolen spoons or forks,' the witness could not recollect which, and followed the remark with the statement, 'that was all she would ever get.' "

In the light of this testimony we cannot say that there was not sufficient. evidence from which this jury could find that the mind of this testatrix was not controlled by an insane delusion to the detriment of the plaintiff. That she believed that plaintiff had stolen from her is beyond question under the evidence. That no sane mind could entertain this belief in view of the circumstances is too clear for controversy. That she entertained this delusion when she expressed herself about the plaintiff to the scrivener is the only reasonable conclusion to be drawn from the remark she made, especially so when considered in connection with the threat contained in her letter of June 26, 1912, to the plaintiff. That this delusion was a potent factor in her mind when she sought to dispose of

her property by the paper in question would seem to be plain when it is remembered that after the document was executed and she had returned to West Chester, she repeated the charges to Mrs. Leedom, specifying the articles stolen—spoons and forks—and said "that was all she (the plaintiff) would ever get." She had then disposed of her estate in substantially this fashion so far as the plaintiff was concerned.

It was clearly the province of the jury, under all the evidence, to determine whether there was, in fact, a delusion, and whether it was present in and operative upon the mind of the testatrix, when the will in controversy was made. There was sufficient evidence to sustain the verdict, and we must therefore dismiss the rule for judgment and the rule for a new trial.

Verdict for the plaintiff and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing defendant's motion for binding instructions, and in refusing to enter judgment for defendant n. o. v.

*Arthur Parke,* of *Gheen & Parke,* for appellant.

*Robert S. Gawthrop,* for appellee.

PER CURIAM, March 19, 1917:

The judgment in this case is affirmed on the opinion of the learned court below discharging the rules for judgment non obstante veredicto and for a new trial.