## No. 10,611.

### COLORADO NATIONAL BANK, ET AL. *v.* COLE.

Decided April 7, 1924. Petition for rehearing stricken May 5, 1924.

Will contest. Judgment for contestant.

#### *Reversed.*

1. WILLS—*Testamentary Capacity.* The fact that a testatrix practically disinherited her son, would be no reason for regarding her as lacking testamentary capacity.

2. *Testamentary Capacity—Burden.* Where the contestant of a will to overcome the prima facie case of testamentary capacity relied upon the ground that testatrix was the victim of a delusion he had the burden of showing the fact of delusion.

3. WORDS AND PHRASES—*Delusion.* ·A delusion is a persistent belief in that which has no existence in fact, and which is adhered to against all evidence.

4.   WILLS—*Contest—Delusion.*  In a will contest, before contestant could defeat the will upon the ground that the testatrix was under the delusion that he was immoral and a drunkard, he had to establish the fact that she entertained that opinion, that it was false, and that there was no good reason why she should so believe concerning him.

5.   EVIDENCE—*Will Contest.*  Where a son, contesting his mother's will on the ground that she entertained a delusion concerning him, offered no evidence to show that the alleged delusion was without foundation, it is held that the proponent had the right to show that her alleged erroneous belief was in accord with the facts, and the exclusion of such evidence was prejudicial error.

6.   JUDICIAL RECORDS.  In a will contest, it being alleged that the testatrix labored under a delusion that the contestant, her son, was addicted to drinking and consorting with lewd women, it was error to exclude as evidence, verdict and judgment in a divorce action in which, being the defendant, he was found guilty of adultery.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Messrs. STOKES & SHERMAN, Mr. N. WALTER DIXON, for plaintiffs in error.

Mr. REES D. REES, Mr. C. E. WAMPLER, Messrs. ROTHGERBER & APPEL, for defendant in error.

*Department Two.*

MR. CHIEF JUSTICE TELLER delivered the opinion of the court.

PLAINTIFFS in error were proponents of a will executed by Queen V. Cole, deceased, and the defendant in error is the son of said testatrix and a contestant of the will. The ground of the contest was that the testatrix was not of testamentary capacity when the will was executed. On a trial of that issue to a jury in the district court, verdict was in favor of contestant, and judgment was entered accordingly. The case is now before us for review.

The will, after making sundry bequests to friends and relatives, devoted the remainder of the estate to charitable purposes. The only reference in the will to the contest-

ant was this: "I give and bequeath to my son, Albert J. Cole, one silk eiderdown comforter and two water color portraits now owned by me. The reason that I do not give more to my son, Albert J. Cole, is that he has been amply provided for by his father, Henry Cole, deceased."

It is contended by defendant in error that this bequest is itself evidence that the testatrix was insane. It being established that one making a will is not bound to dispose of his property according to the rules of descent or relationship, the fact that the testatrix practically disinherited her son, even without the explanation she made of her action, would be no reason for regarding her as lacking testamentary capacity.

There are numerous errors assigned, but we do not think it necessary to consider more than one of them; that is, the refusal of the court to permit testimony as to acts of the contestant which might have been a basis for the feeling of the testatrix toward him, unless a knowledge of those acts was brought home to her. There was evidence that the testatrix entertained a belief that her son was addicted to drinking, and consorting with lewd women. The contestant contends that this belief was a delusion, which shows the testatrix incompetent to make a will. He offered, however, no substantial evidence that such belief was without foundation, and, therefore, a delusion. To a question to one of proponent's witnesses as to contestant's showing evidence of intoxication when he visited his mother's home, and to an offer in evidence of the pleadings, verdict, and judgment in a divorce action, in which the defendant had been found guilty of adultery, objection was made, and sustained, on the ground that knowledge of his condition at the time named, or of the finding in the divorce action, was not brought home to the testatrix. The court announced that no act of contestant was material, unless knowledge of it was conveyed to the testatrix. That was no ground for sustaining the objection in either case.

The contestant, to overcome the *prima facie* case of

testamentary capacity, relied upon the ground that the testatrix was a victim of a delusion. He had therefore the burden of showing the fact of delusion. That involved proof that she entertained the belief in question, that it was groundless, and was persistently held by her, without justification in fact.

In *McGovran's Estate*, 185 Pa. 203, 39 Atl. 816, an attempt was made to defeat a will by showing that the testatrix had experienced a violent change of feeling toward the contestant. The court said that the change of feeling did not of itself call for an explanation in a case of this kind, and added: "When the appellant, therefore, showed this condition of mind and feeling on the part of the testatrix toward herself, she did not then throw upon the other side the burden of showing reason and justification for it. The burden still rested upon her, as part of her case, to show at least by evidence sufficient to support a verdict, that the change resulted from a delusion, that is to say, that it was without any cause whatever in reason or in fact, but rested wholly on things imagined. For a delusion is a creation of the imagination. It is said to be something that springs up spontaneously in the mind, and which rests on no intrinsic evidence of any kind * * *. Her extreme distrust of appellant results from an opinion with respect to her, which may have been, and doubtless was wholly unreasonable and unworthy of her, but it can have no weight in this inquiry, except it be shown that the opinion rests upon a state of facts not real, but imagined. It is never a question of soundness of view in said investigation, but the proper inquiry always is, whether the party imagined or conceived something to exist which did not in fact exist, and which no rational person, in the absence of evidence would have believed to exist."

In *Robinson v. Adams*, 62 Me. 369, 16 Am. Rep. 473, the court approved an instruction to the effect that: "A person who believes something to exist which not only does not exist, but of which he has no evidence sufficient

to satisfy any healthy mind, and he acts upon it, reasons upon it, and holds it as a reality," is afflicted with an insane delusion.

The supreme court of Michigan, in *Merriman's Appeal*, 108 Mich. 454, 66 N. W. 372, defines delusion as: "A belief in a fact for which there is no foundation."

And in *Smith v. Smith*, 48 N. J. Eq. 566, 25 Atl. 11, it is said that, "delusion arises from morbid internal impulse, and has no basis in reason."

In *Bradley v. Palmer*, 193 Ill. 15, 61 N. E. 856, it was charged that the testatrix was under an insane delusion that she was in danger of being poisoned, and the court said:

"Without considering whether there might not have been * * * exaggeration in the proof of her declarations as to the fear of being poisoned, it would still require proof of such facts and circumstances as would not only show that she had no grounds for such fear, but that it would not, under the circumstances, have been engendered in a rational mind."

In *Stevens v. Leonard*, 154 Ind. 67, it was charged that the testator made his will under a delusion concerning the character and conduct of his brother, Alvah. Testamentary capacity was an issue. It was objected that evidence was admitted showing that Alvah had charged the testator, his brother, with dishonesty, and with having robbed his other brothers of what was justly due them. The court said: "The theory of the appellants was that the unfriendly feelings entertained by the deceased toward his brother Alvah were the result of mere delusions of fancy, and were without substantial foundation in point of fact. Much testimony was introduced by appellants to show the existence of these unnatural sentiments, and on the other hand the appellees undertook to account for them by proving that Alvah's conduct in various business transactions had created enmity between him and Joseph. The actual state of the relations between Alvah and Joseph, therefore, became a material fact in the case, and proof that

Alvah reciprocated the feelings of distrust and dislike cherished by his brother Joseph, and that he publicly denounced Joseph as a dishonest and unscrupulous man, was entitled to some weight upon the question whether Joseph's aversion for Alvah was but the hallucination of an enfeebled or distracted mind." It was therefore held that the evidence was properly admitted to show that Joseph's attitude toward his brother was reasonable.

A delusion being, thus, a persistent belief in that which has no existence in fact, and which is adhered to against all evidence, one who asserts that a testator was the victim of a delusion must show that the testator entertained a belief in something which, in fact, had no existence, and of which there was no reasonable evidence.

In this case, before the contestant could defeat the will on the ground that the testatrix was under a delusion that he was immoral and a drunkard, he must establish (1) the fact that she entertained that opinion of him; (2) that such opinion was false; and (3) that there was no good reason why she should have so believed concerning him. From the record it does not appear that contestant offered any evidence to show that his mother's opinion of him was without foundation in fact; and when the proponents offered evidence of the truth of the testatrix' belief— waiving the failure of contestant to support his position by evidence,—the court sustained an objection to it. Certainly proponent had the right to show that what was alleged to be a delusion was not so, by proving that the supposed erroneous belief was in accord with the facts. If the contestant's conduct had been as his mother supposed, it was wholly immaterial how she became possessed of knowledge of his conduct, and it was not necessary to show that any specific act had come to her notice. The rejection of this competent and very material evidence was prejudicial error.

Counsel for contestant rely upon *Wilson v. Mitchell,* 48 Colo. 454, 111 Pac. 21, 30 L. R. A. (N. S.) 507, to support the ruling of the court excluding the verdict and judg-

ment in the divorce case. In that case the court treated the record offered as being intended to support a plea of res adjudicata. It speaks of the conclusiveness of the judgment as to the things determined in the case. Upon the point that it might be considered as evidence, though not conclusive proof of the facts upon which it is based, the court held that no evidentiary matter could be deduced from the decree. This is far from holding that a record having evidentiary value would not be admissible. The case, therefore, is not authority for the ruling under review.

The proponents having, as above stated, assumed the burden of proving the existence of conditions, the nonexistence of which was a part of contestant's case, were entitled to introduce any evidence which tended to show the existence of those conditions. In the case, the record of which was excluded, the contestant had litigated before a jury a charge of adultery, and the verdict had been against him. While that would not be conclusive upon the point, it was evidence which the jury in this case might properly have considered. There is a vital difference between the offer of a judgment by way of a bar, and its offer as a matter of evidence only. In Chamberlayne's Modern Law of Evidence, section 3381, it is said: "A judicial record when produced from the proper custody may be introduced as proof of any fact or facts which are properly incorporated, provided of course that such fact or facts are relevant in the trial of the particular matter in controversy."

In *Van Rensselaer v. Akin,* 22 Wend. (N. Y.) at page 554, it is said: "It is perfectly well settled, that judicial proceedings may be given in evidence like anything else, as circumstances from which to infer a given consequence, without that concurrence as to identity of parties and subject matter which works a technical bar. The general principle was, I think, involved in *Peters v. Anderson,* 5 Taunt. 596, where the record in one suit against the defendant was received as a circumstance to show that the

plaintiff had appropriated certain payments made by the defendant to another demand against him."

To the same effect, see *Sheibley v. Fales,* 81 Neb. 795, 116 N. W. 1035; *Odiorne v. Bacon,* 60 Mass. 185; *Rogers v. Riverside L. & I. Co.,* 132 Cal. 9, 64 Pac. 95; *Rapley v. McKinney's Estate,* 143 Mich. 508, 107 N. W. 101; *Smith v. Smith,* 22 Iowa, 516; *Numbers v. Shelly,* 78 Pa. 426.

For the reasons above given, the judgment is reversed.

MR. JUSTICE DENISON and MR. JUSTICE WHITFORD concur.