No. 16,795.

CUNNINGHAM, ADMINISTRATOR, *v.* STENDER.

(255 P. [2d] 977)

Decided March 30, 1953.

Mr. WALDO RIFFENBURGH, Mr. KENNETH W. ROBINSON, Mr. ROBERT D. CHARLTON, for plaintiff in error.

Mr. ALBERT P. FISCHER, Mr. L. R. TEMPLE, Mr. HATFIELD CHILSON, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

Defendant in error was the proponent in the county court of Larimer County of a "lost" will alleged to have been executed by his widowed sister, Dorothea Cunningham, a resident of Ft. Collins, Colorado, in which instrument proponent, four of his brothers and sisters and a

nephew were named as devisees and legatees. Caveat was filed by plaintiff in error, son and only heir at law of the alleged testatrix. In this caveat the son alleged that the will was not in existence when his mother died; that if she made such a will, she was not possessed of testamentary capacity at the time of the execution thereof, and that the will, if executed, was procured by fraud and undue influence exercised by proponent.

The decision of the county court was adverse to proponent. On appeal to the district court of Larimer county, the verdict of the jury also was against proponent, and he brings the case to this court by writ of error. In *Stender v. Cunningham, Administrator,* 123 Colo. 5, 225 P. (2d) 52, the judgment of the district court was reversed and the cause remanded for further proceedings. On a retrial of the issue the verdict of the jury was again in favor of proponent and the "lost" will was admitted to probate and record. Caveator brings the cause here by writ of error. We shall refer to the parties either by name or as proponent or caveator.

In the instant case, by the will offered for probate, a nephew of decedent, residing in Denver, was bequeathed one thousand dollars; two sisters and two brothers of decedent, living in Denver, each were given one-fifth of the residue of the estate, and a like one-fifth interest was given to a sister of decedent living in California, all to the exclusion of plaintiff in error who was the sole heir of his mother, and the only one of the interested parties resident in the home town of testatrix.

C. J. Cunningham, contending that his mother died intestate, was, prior to the submission of the "lost" will for probate, appointed administrator of the estate of his mother. Cunningham filed the caveat in his individual capacity, and not as administrator of the estate. From the record we find that the first time the words "as administrator of the estate of Dorothea Cunningham" were appended to the name of C. J. Cunningham,

was in the special verdict of the jury in the first trial in the district court.

Proponent moves this court to dismiss the writ of error asserting that Cunningham, as administrator, has "no appealable interest in the judgment of the lower court, and is not a proper party to prosecute this writ of error." Consel for defendant in error rely on *Barth, Executor v. Richter,* 12 Colo. App. 365, 55 Pac. 610; *Wilson, Executor v. Board of Regents of the University of Colorado,* 46 Colo. 100, 102 Pac. 1088; *Reddington v. Reddington,* 66 Colo. 485, 180 Pac. 675; *Fenn v. Knauss,* 87 Colo. 175, 285 Pac. 495; *Blandy, Executrix v. Taaffe,* 111 Colo. 382, 143 P. (2d) 273.

■ We are told in the brief of counsel for proponent, in support of this motion, that "individually he [Cunningham] is not complaining." Were we to sustain this motion to dismiss the writ of error, we would subordinate substance to shadow. Courts look to the substance rather than the mere form. *Ward v. Teller Reservoir and Irrigation Co.,* 60 Colo. 47, 153 Pac. 219; *Kern v. Campbell,* 97 Colo. 64, 47 P. (2d) 688. Here, it is patent from the record that Cunningham filed the caveat in his individual capacity. When Stender appealed from the judgment of the county court to the district court, he entitled the appeal as "Stender v. Cunningham, as administrator of the estate of Dorothea Cunningham, deceased." The same title was used in the district court, and also when the case was brought by Stender to this court, reported in 123 Colo. 5, 225 P. (2d) 52. After remand, the same title was used in the trial in the district court; all this without objection on the part of counsel for proponent.

■ Under the authority of *Blandy v. Taaffe, supra,* we may strike the words, "as administrator of the estate of Dorothea Cunningham, deceased" so that the record will speak the truth concerning the capacity in which Cunningham appears. The proceeding here should be entitled *"In re Estate of Dorothea Cunningham, C. J.*

*Cunningham v. Royal T. Stender."* Accordingly, it is so amended. The motion to dismiss the writ of error is denied.

Counsel for plaintiff in error specify as error: 1. The insufficiency of the evidence to sustain the verdict of the jury. 2. Error in instructions regarding testamentary capacity. 3. That the evidence was insufficient to overcome the presumption that, since the original will was last seen in the exclusive possession of the mother of caveator, and could not thereafter be found, the same was by her destroyed with intention to revoke the will. 4. That the trial court erred in denying Cunningham a new trial because of newly discovered evidence.

The record in this case, in some respects, presents an unusual situation: The will attempted to be proved was allegedly dated April 2, 1948; on July 27, 1948, Dorothea Cunningham in the county court of Larimer county, Colorado, was adjudged a mental incompetent, and declared to be "by reason of old age, disease or weakness of mind incapable, unassisted to properly manage and take care of herself or her property;" she died August 31, 1948.

Because error in the instructions requires a reversal, we need not consider specifications numbered 1, 3 and 4. The trial court told the jury in Instruction No. 6, speaking of what constitutes "sound mind at the time of the making of the will: * * * It is enough if she was capable of comprehending her property interests of which she was possessed, and of herself determining what disposition she desired to make of such property, and of making such disposition." And in Instruction No. 7, the court said: "* * * It is only your province to determine whether or not the will was in fact the will of the testator; that is, that the will was executed by her at a time when her mind had sufficient capacity to know and understand what disposition she wished to make of her property and upon whom she wished to bestow the same, * * * even if the jury are satisfied that the mental

powers of Dorothea Cunningham had become enfeebled or disturbed by disease at the time she made the alleged will, still, *if they find from the evidence that she did fully understand and intend to make the disposition which she made of her property, that is sufficient as touching the question of mental soundness or capacity."* (Emphasis supplied)

But this is not sufficient. One may "fully understand and intend to make the disposition which she made of her property," and yet be incompetent to make a will. More is involved than mere capacity to understand what disposition she *is* making and an intent to make disposition of her property. Her understanding and intention may have been based upon an inability because of disease or otherwise to remember and know the natural objects of her bounty. To illustrate, let us assume a case, where the testatrix, by reason of disease, has no recollection whatever at the time she signs a will that she has a son. In her mental confusion she believes herself to be without children. She knows she has property and she knows of what it consists. Erroneously believing that she has no son, she intends to leave that property, let us say, to a church, to an orphan asylum, to her physician, or, as in the instant case, to a nephew and her brothers and sisters. Obviously, if such is the mental state of the testatrix, she is incompetent to make a will. Yet under Instructions Nos. 6 and 7 the court in effect told the jury that such a will would be good and valid, because it was executed at the time when "she did fully understand and intend to make the disposition which she made of her property," the court adding: "that is sufficient as touching the question of mental soundness or capacity."

In Instruction No. 7 we find the following: "* * * Even if the jury are satisfied that the mental powers of Dorothea Cunningham had become enfeebled or disturbed by disease at the time she made the alleged will, still, if they find from the evidence that she did fully

understand and intend to make the disposition which she made of her property, that is sufficient as touching the question of mental soundness or capacity." In other words, even though enfeebled and disturbed by disease so that she did not know she had a son, and because of mental illness she did not know who the natural objects of her bounty were, her will is good if, as the court said, she did understand and intend to make the disposition which she made of her property. This, was error. The law is clear that one of the tests of mental competency to make a will is the ability of the testator, at the time the will is executed, to recall and remember the persons who are the natural objects of his bounty. This is well stated in *Lehman v. Lindenmeyer,* 48 Colo. 305, 109 Pac. 956:

"Woerner, speaking of the mental vigor requisite to make a will, says:

" 'The most accurate rule laid down in a number of States seems now to be this: "While the law does not undertake to measure a person's intellect, and define the exact quantity of mind and memory which a testator shall possess to authorize him to make a valid will, yet it does require him to possess mind to know the extent and value of his property, *the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct and treatment toward him, their capacity and necessity,* and that he shall have sufficient active memory to retain all of these facts in his mind long enough to have his will prepared and executed; if he has sufficient mind and memory to do this, this law holds that he has testamentary capacity." ' " (Emphasis supplied).

The Lehman case, supra, is the leading one in this jurisdiction, and has been cited with approval in other jurisdictions. In that case this court approved an instruction reading: "If a party makes a will contrary to natural justice, this, with other facts, may be considered, but the mere fact that a will is not exactly accord-

ing to what our own conception of justice would be, is not of itself sufficient to invalidate a will."

In the same case, Chief Justice Steele said: "But a jury, in determining whether a decedent was capable of disposing of his property by will, has a right to consider that, in disposing of it, he has passed over the natural objects of his bounty, and has bestowed his property upon others." This is the generally recognized rule.

"Testamentary capacity is determined objectively from the standpoint of the purpose to be accomplished. A testator, at the time of executing his will, must have sufficient mental capacity to know the natural objects of his bounty, to comprehend the kind and character of his property, to understand the nature and effect of his act, and to make a disposition of his property according to some plan formed in his mind.* * * If he knows his estate, the object of his affections, and to whom he wishes to give his property, and understands the business in which he is engaged, he has sufficient capacity to make a will. A more complete statement is that a disposing mind and memory is one in which the testator has a full and intelligent consciousness of the nature and effect of the act he is engaged in, a knowledge of the property he possesses, and an understanding of the disposition he wishes to make of it by will, and of the persons and objects he desires to participate in his bounty, or, as it is often expressed, a knowledge of the natural objects of his bounty. This includes a recollection of the persons related to him by ties of blood and affection, and of the nature of the claims of those who are excluded from participating in his estate. One has testamentary capacity who can comprehend the conditions of his property, *his relations to the persons who are or should be the objects of his bounty,* the scope and bearing of the provisions of the will, and memory sufficient to call in mind, without prompting, the particulars or elements of the business to be transacted, and to hold them there a sufficient length of time to

perceive at least their obvious relations to each other, and to be able to form rational judgment in relation to them." (Emphasis supplied) 57 Am. Jur. section 64, pages 81 and 82.

"The quantum of mental capacity requisite to the valid execution of a will has been stated to be knowledge and understanding by the testator of the nature and consequences of his act. This has been held to include all other essentials. However, subject to slight variations or modifications in the form of expression of the rule by the various cases, testamentary capacity, or a sound mind as the term is applied to the preparation and execution of a will, may be more fully stated to consist of a mentality and memory sufficient to understand intelligently the nature and purpose of the transaction, to comprehend generally the nature and extent of the property to be bequeathed, *to recollect the testator's relationship* to the objects of his bounty and to those who naturally would have some claim to his remembrance, and to understand the manner and effect of the desired disposition." (Emphasis supplied) 68 C.J. section 23, page 424.

 The remaining issue is that of the mental capacity of the testatrix to make a will. The will having been attacked on the ground of lack of such capacity, before it may be upheld, it must be shown that (1) she understood the nature of her act; (2) that she knew the extent of her property; (3) that she understood the proposed testamentary disposition; (4) *that she know the natural objects of her bounty;* and (5) that the will represented her wishes. *Spier v. Spier,* 99 Neb. 853, 157 N.W. 1014, LRA1916E, 692; *In re Estate of Kajewski,* 134 Neb. 485, 279 N.W. 195.

"The law is well settled that mental capacity of a testatrix sufficient to make a valid will requires that at the time of making the will she 'must understand the nature, situation and extent of her property *and the claims of others upon her bounty, or her remembrance,* and she must be able to hold these things in her mind

long enough to form a rational judgment concerning them.' *In re Estate of Jernberg,* 153 Minn. 458, 460, 190 N.W. 990, 991." (Emphasis supplied) *In re Estate of Forsythe,* 221 Minn. 303, 22 N.W. (2d) 19.

In the instant case the evidence submitted by the respective parties is in sharp conflict. Four physicians testified that the testatrix was incompetent to make a will. These physicians included her own doctors. Caveator pictured testatrix as a secretive women of advanced age, afflicted with generalized arterioschlerosis and senile dementia, who was incoherent, who could not "recall what happened an hour before," who hid linens, towels and sheets, and who failed to recognize her physician, who in order to make her understand who he was had to make his identity known to her. On the other hand, witnesses for proponent regarded testatrix as sane, and so testified. For the jury to correctly determine this issue it was essential that it be fully instructed on what constituted testamentary capacity.

■ Counsel for defendant in error do not seriously dispute that one of the proper elements to be considered by the jury is whether the testatrix had sufficient mental capacity to know who were the natural objects of her bounty, but they state that the omission of this element in the instructions was not error, because plaintiff in error did not submit an entire instruction regarding mental capacity including this phase. Their position is not tenable, for here counsel for plaintiff in error definitely called attention to the trial judge to the omission, and asked 'for its inclusion. This, the court declined to do.

For this prejudicial error the judgment is reversed, and the cause remanded for further proceedings in harmony herewith.

Mr. Justice Bradfield did not participate.