In the Matter of the Estate of Spicer H. Breeden, Deceased:

Holly Breeden Connell, and Vic E. BREEDEN, III, Petitioners,

v.

Sydney STONE, Respondent.

No. 98SC570.

Supreme Court of Colorado, En Banc.

Jan. 18, 2000.

Semler & Associates, P.C., R. Parker Semler, Denver, Colorado, Attorneys for Petitioners.

Gelt, Fleishman & Sterling, P.C., Dana E. Steele, Harry W. Sterling, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

This court granted certiorari to address two issues raised by Petitioners Holly Breeden Connell and Vic E. Breeden, III (Petitioners).[1] First, Petitioners argue that the probate court incorrectly applied both the "insane delusion" and the *Cunningham*[2] elements tests for testamentary capacity and improperly merged the insane delusion test with the *Cunningham* elements test. Second, Petitioners challenge whether the probate court erred when it denied their motion to dismiss Vic E. Breeden (Breeden Sr.) and Holly Breeden Connell (Connell) as parties based on an improper application of the Dead Man's Statute.[3] We now hold that the probate court correctly applied the two exclusive tests for testamentary capacity to find that the testator, Spicer Breeden, was of sound mind at the time he executed the holographic will. In addition, we hold that the probate court did not abuse its discretion when it denied Petitioners' motion to dismiss Breeden Sr. and Connell as parties, thus precluding their testimony under the Dead Man's Statute.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a contested probate of a handwritten (holographic) will executed by Spicer Breeden, the decedent. Mr. Breeden died in his home on March 19, 1996, from a self-inflicted gunshot wound two days after he was involved in a highly publicized hit-and-run accident that killed the driver of the other vehicle.

Upon entering the decedent's home following his suicide, the Denver police discovered on his desk a handwritten document that read: "I want everything I have to go to Sydney Stone— 'houses,' 'jewelwry,' [sic] stocks[,] bonds, cloths [sic]. P.S. I was *Not* Driving the Vehical— [sic]." At the bottom of the handwritten document, the decedent printed, "SPICER H. BREEDEN" and signed beneath his printed name.

Sydney Stone (Respondent) offered the handwritten document for probate as the holographic will of the decedent. The decedent had previously executed a formal will in 1991 and a holographic codicil leaving his estate to persons other than Respondent. Several in-

---

1. Vic E. Breeden, the decedent's father, was a named party in the contested probate proceeding and in the appeal to the court of appeals. However, on April 19, 1999, Petitioners filed a motion for amendment to caption and suggestion of death, stating that on April 16, 1998, Vic E. Breeden died, leaving Holly Breeden Connell and Vic E. Breeden, III, as his heirs. Accordingly, on May 3, 1999, the court granted the motion to amend the caption to reflect Holly B. Connell and Vic E. Breeden, III, as Petitioners.

2. *Cunningham v. Stender*, 127 Colo. 293, 255 P.2d 977 (1953).

3. *See* § 13–90–102(1), 5 C.R.S. (1999).

dividuals filed objections to the holographic will, including Petitioners, who alleged lack of testamentary capacity.[4]

On September 3–6, 1996, a hearing was held on the petition for formal probate. Both parties presented evidence in the form of testimony of factual and expert witnesses, handwriting samples, and other documents. On September 26, 1996, the probate court formally admitted the decedent's holographic will to probate. The court made several findings based on the evidence presented. First, the court found that the decedent used cocaine and alcohol for several years prior to his death, based on the testimony of his friends Jennifer Chelwick and Michael Crow. Relying on the autopsy report and testimony from the decedent's sister, the court found that the decedent used alcohol and cocaine on the evening of March 17 and between March 17 and 19, and that substantial alcohol was consumed proximate to the time of death. Based on the testimony of a number of the decedent's friends, the court found that the decedent's moods were alternately euphoric, fearful, and depressed, and that he was excessively worried about threats against himself and his dog from government agents, friends, and others.

In addition, the probate court considered the testimony of a number of expert witnesses, including two forensic toxicologists, two forensic psychiatrists, a forensic document examiner, and two handwriting experts. After considering conflicting evidence from the various expert witnesses, the court concluded that the decedent possessed the motor skills necessary to write his will and that his handwriting on the holographic will was unremarkable when compared to other writing exemplars. The court also considered the testimony of the decedent's friends Ken McSpadden and Rick Eagan, who testified that in the two weeks prior to his death, the decedent had indicated to each of them in separate conversations that he did not intend to leave his estate to his family.[5]

After considering the evidence, the probate court found that Petitioners did not prove by a preponderance of the evidence that, because of the decedent's chronic use of alcohol and drugs or their use between March 17 and 19, he was not of sound mind when he executed the holographic will. In addition, the probate court held that the stress and anxiety that compelled the decedent to commit suicide did not deprive him of testamentary capacity. The court also found that the decedent's insane delusions regarding his friends, government agencies, and others, did not affect or influence the disposition of his property. In reaching the conclusion that the decedent was of sound mind at the time he executed the will, the probate court relied on the will itself, which evidenced a sufficient understanding of the general nature of his property and the disposition under the will, the testimony of two doctors regarding the decedent's motor skills at the time he wrote the will, evidence that the decedent had omitted his father and sister from his will in the past, and testimony from two friends that indicated the decedent had been considering revising his will in the future.

Petitioners appealed to the court of appeals, asserting that the probate court erred by applying and merging both tests for sound mind contained in Colorado Jury Instruction 34:9 and by refusing to dismiss Connell and Breeden Sr. as parties to the case, thus precluding their testimony under the Dead Man's Statute. The court of appeals affirmed the decision of the probate court, holding that the probate court order, when read in its entirety, indicated that the probate court correctly applied the appropriate tests for sound mind and correctly applied the Dead Man's Statute to find that Holly Breeden Connell and Vic E. Breeden should not be dismissed as parties. *See In re Breeden*, No. 96CA2012 (Colo.App. July 2, 1998) (not selected for official publication).

We granted certiorari to address whether the probate court correctly applied the insane delusion and *Cunningham* elements

---

4. Petitioners also alleged at the probate hearing lack of testamentary intent and that the will did not conform to section 15–11–502, 5 C.R.S. (1999), but these issues are not before us.

5. In particular, McSpadden testified that at a March 14, 1996 lunch meeting, the decedent told him that he intended to leave his estate to McSpadden and Respondent.

tests and whether the probate court correctly denied Petitioners' motion to dismiss Connell and Breeden Sr. as parties.[6]

## II. TESTAMENTARY CAPACITY

■ Underlying Colorado's law of wills is the fundamental concept of freedom of testation; namely that a testator "may dispose of his property as he pleases, and that [he] may indulge his prejudice against his relations and in favor of strangers, and that, if he does so, it is no objection to his will." *Lehman v. Lindenmeyer*, 48 Colo. 305, 313, 109 P. 956, 959 (1909). This principle, however, is subject to the requirement that the maker of the will possess testamentary capacity at the time he executes the will. A person has testamentary capacity if he is an "individual eighteen or more years of age who is of sound mind." § 15–11–501, 5 C.R.S. (1999).

■ Until 1973, the proponents of a will assumed the burden of proving that the testator had testamentary capacity at the time he executed a will. However, in 1973, the legislature shifted this burden to the contestants of a will. *See* Ch. 451, sec. 1, § 153–13–407, 1973 Colo. Sess. Laws 1538, 1576 (codified as amended at § 15–12–407, 5 C.R.S. (1999)). Under section 15–12–407, once a proponent of a will has offered prima facie proof that the will was duly executed, any contestant then assumes the burden of proving a lack of testamentary capacity, including a lack of sound mind, by a preponderance of the evidence. *See id.; see also In re Estate of Olschansky*, 735 P.2d 927, 929 (Colo.App.1987); *In re Estate of Grobman*, 635 P.2d 231, 233 (Colo.App.1981). The issue of what constitutes sound mind has developed along two separate lines of inquiry, summarized below.

### A. The *Cunningham* Test

We initially defined sound mind as having sufficient understanding regarding "the ex-

tent and value of [one's] property, the number and names of the persons who are the natural objects of [one's] bounty, their deserts with reference to their conduct and treatment toward [oneself], their capacity and necessity, and that [one] shall have sufficient active memory to retain all of these facts in [one's] mind long enough to have [one's] will prepared and executed." *Lehman*, 48 Colo. at 312, 109 P. at 958.

■ After *Lehman*, this court further refined the test for sound mind in 1953 in the landmark case *Cunningham v. Stender*, when we held that mental capacity to make a will requires that: (1) the testator understands the nature of her act; (2) she knows the extent of her property; (3) she understands the proposed testamentary disposition; (4) she knows the natural objects of her bounty; and (5) the will represents her wishes. 127 Colo. 293, 301, 255 P.2d 977, 981–82 (1953).

### B. The Insane Delusion Test

This court has also held that a person who was suffering from an insane delusion at the time he executed the will may lack testamentary capacity. We first defined an insane delusion in 1924 as "a persistent belief in that which has no existence in fact, and which is adhered to against all evidence." *In re Cole's Estate*, 75 Colo. 264, 269, 226 P. 143, 145 (1924). We held that a party asserting that a testator was suffering from an insane delusion must meet the burden of showing that the testator suffered from such delusion. *See id.*

We also have addressed the issue of the causal relationship necessary between an individual's insane delusion and his capacity to contract. *See Hanks v. McNeil Coal Corp.*, 114 Colo. 578, 585, 168 P.2d 256, 260 (1946). In *Hanks*, we noted that contractual capacity and testamentary capacity are the same. *Id.* In that case, a prosperous farmer suffered

---

**6.** We granted certiorari on the following issues:

(1) Whether the court of appeals improperly applied the "Insane Delusions Test" for testamentary capacity by merging the mutually exclusive jury instructions test for "unsound mind."

(2) Whether the court of appeals improperly applied the Dead Man's Statute to affirm the probate court's denial of Objectors' Motion to Dismiss Holly Breeden Connell and Vic E. Breeden as parties, thus precluding testimony regarding their conversations with the deceased, Spicer Breeden.

mental and physical deterioration after being diagnosed with diabetes. He became irritable and critical of his son's work, and in 1934 he developed a "secret formula" for a medicine to cure fistula[7] in horses that was comprised of ground china, brick dust, burnt shoe leather and amber-colored glass. This mixture was to be poured into the ear of the horse opposite the shoulder suffering from the fistula infection. In 1937, the farmer began to devote most of his time and money to peddling his medicine. In 1940, he was adjudicated insane and his son·was appointed conservator of his estate. His son subsequently brought suit against a coal manufacturer to put aside a contract, alleging that his father was insane at the time he entered the contract. The lower court held that, although the farmer was suffering from insane delusions related to his fistula cure, there was no evidence of delusions in connection with his other businesses at that time. We affirmed, holding that

> [o]ne may have insane delusions regarding some matters and be insane on some subjects, yet [be] capable of transacting business concerning matters wherein such subjects are not concerned, and such insanity does not make one incompetent to contract unless the subject matter of the contract is so connected with an insane delusion as to render the afflicted party incapable of understanding the nature and effect of the agreement or of acting rationally in the transaction.

*Id.* at 585, 168 P.2d at 260.

The *Hanks* case sets out a standard for the requisite causal connection between insane delusions and contractual capacity that is equally applicable to testamentary capacity. A number of other courts have applied a similar standard in the context of testamentary capacity by phrasing the inquiry as whether the delusion *materially* affects the contested disposition in the will. *See Akers v. Hodel*, 871 F.2d 924, 934 (10th Cir.1989) (holding that test under Oklahoma law is whether an insane delusion materially affected the will); *Velez v. Metropolitan Life Ins.*,

723 F.2d 7, 9 (10th Cir.1983) (applying the "materially affect" test of testamentary capacity to the Oklahoma law of contracts); *Benjamin v. Woodring*, 268 Md. 593, 303 A.2d 779, 784 (1973) (stating that to set a will aside based on an insane delusion, will must be the consequence or product of the delusion); *In re Estate of Aune*, 478 N.W.2d 561, 564 (N.D.1991) (requiring that the will is the consequence or product of an insane delusion in order to set it aside); *In re Estate of Kesler*, 702 P.2d 86, 88 (Utah 1985) (holding that there was substantial evidence to support that the testator suffered from insane delusions that materially affected the contested will and trust); *In re Estate of Watlack*, 88 Wash.App. 603, 945 P.2d 1154, 1158 (1997) (finding that facts supported the conclusion that the will was the product of insane delusions); *In re Estate of Evans*, 83 Wis.2d 259, 265 N.W.2d 529, 534–35 (1978) (stating that "a testamentary document will not be disallowed unless ... the insane delusion materially affected the disposition embodied in the will").

■ Based on Colorado precedent and the persuasive authority from other jurisdictions discussed above, we hold that before a will can be invalidated because of a lack of testamentary capacity due to an insane delusion, the insane delusion must materially affect the disposition in the will.

### C. *Cunningham* and Insane Delusion Tests Are Not Mutually Exclusive

As the preceding case law indicates, the *Cunningham* and the insane delusion tests for sound mind have developed independently of each other.

The *Cunningham* test is most commonly applied in cases in which the objectors argue that the testator lacked general testamentary capacity due to a number of possible causes such as mental illness, physical infirmity, senile dementia, and general insanity. *See, e.g., White v. White*, 149 Colo. 166, 170, 368 P.2d 417, 419 (1962) (holding that physical illness was insufficient to render a testator

---

7. Fistula is "an abnormal passage leading from an abscess or hollow organ to the body surface ... and permitting the passage of fluids or se-

cretions." *Webster's Ninth New Collegiate Dictionary* 467 (1988).

incapacitated to make a will where there was no evidence that she did not understand the nature of the transaction); *Deeds v. Proudfit,* 133 Colo. 85, 89, 293 P.2d 643, 645 (1956) ("proponent established to the satisfaction of the jury that deceased knew and understood the business she was transacting at the time of the execution of the will and understood the nature and extent of her property and the natural objects of her bounty"); *In re Shapter's Estate,* 35 Colo. 578, 580–81, 85 P. 688, 690 (1905) (holding that despite "enfeebled" condition, direct and circumstantial evidence indicated that the testator understood the nature of his actions); *Calloway v. Miller,* 58 N.M. 124, 266 P.2d 365, 368 (1954) (effects of advanced age do not establish lack of testamentary capacity where the testator had knowledge of meaning of making a will, of character and extent of the estate, and of the natural objects of his bounty).[8]

The insane delusion test ordinarily involves situations in which the testator, although in possession of his general faculties, suffers from delusions that often take the form of monomania or paranoia.[9] *See, e.g., Davis v. Davis,* 64 Colo. 62, 170 P. 208 (1917) (father who believes his son is not his son suffers from an insane delusion); *see also In re Haywood's Estate,* 109 Cal.App.2d 388, 240 P.2d 1028, 1032–33 (1952) (fact that a testator dislikes the natural objects of his bounty is not an insane delusion); *McReynolds v. Smith,* 172 Ind. 336, 86 N.E. 1009, 1012 (1909) (belief that property worth several million dollars is only worth ten thousand dollars is an insane delusion); *Power v. Overholt,* 257 Pa. 254, 101 A. 733 (1917) (a testator's belief, not based on any evidence, that his niece stole from him is an insane delusion); *In re Hanson's Estate,* 87 Utah 580, 52 P.2d 1103, 1111–12 (1935) (holding that a testator did not suffer from insane delusions though she was afraid of men, was afraid to go out at night, was self-conscious about a deformed back, was untidy and disheveled, was sensitive, believed that others were plotting against her, and disliked talking to more than one person at a time).

■ As such, the *Cunningham* and insane delusion tests, although discrete, are not mutually exclusive. In order to have testamentary capacity, a testator must have a sound mind. In Colorado, a sound mind includes the presence of the *Cunningham* factors *and* the absence of insane delusions that materially affect the will. As noted above, insane delusions are often material to the making of the will, and thus will defeat testamentary capacity. *See Akers v. Hodel,* 871 F.2d at 934; *Benjamin v. Woodring,* 303 A.2d at 784; *In re Estate of Aune,* 478 N.W.2d at 564; *In re Estate of Kesler,* 702 P.2d at 88; *In re Estate of Watlack,* 945 P.2d at 1157–59; *In re Estate of Evans,* 265 N.W.2d at 534–35. However, just as in the *Hanks* case, not all insane delusions materially affect the making of a will. Nonetheless, a testator suffering from an immaterial insane delusion must still meet the *Cunningham* sound mind test.

Accordingly, we hold that an objector may challenge a testator's soundness of mind based on both or either of the *Cunningham* and insane delusion tests.

### D. The Jury Instruction

Instruction 34:9 of the Colorado Jury Instructions is consistent with this holding. The Instruction informs the jury that:

> A will which was executed at a time when the person making the will lacked testamentary capacity is not valid and is not entitled to be admitted to probate. (*name of alleged testator*)[10] lacked testamentary capacity if it is proved that (he)(she) … (was not of sound mind) at the time the will was … executed.

---

**8.** Although some of these cases predate *Cunningham* or occurred in other states, the tests applied are substantially the same.

**9.** Monomania is defined as "insanity upon a particular subject only, and with a single delusion of the mind," while paranoia is defined as "chronic delusional insanity" that is marked by "a false premise, pursued by a logical process of reasoning to an insane conclusion." 1 William J. Bowe & Douglas H. Parker, *Page on Wills* § 12.31 (W.H. Anderson Co. ed., 4th ed. 1960 & Supp. 1999).

**10.** Footnote 2 to CJI–Civ. 4th 34:9 directs one to use "whichever parenthesized and bracketed portions of the instruction are appropriate in light of the evidence in the case."

(A person is not of sound mind if, when executing a will, [that person is afflicted with an insane delusion that affects or influences the dispositions of property made in the will] [or][that person does not understand all of the following:

1. That he or she is making a will;
2. The nature and extent of the property he or she owns;
3. How that property will be distributed under the will;
4. That the will distributes the property as he or she wishes; and
5. Those persons who are the natural ones to receive his or her property.])

CJI–Civ. 4th 34:9 (italics, brackets, and parentheses in original).

The definition of an insane delusion is contained in Colorado Jury Instruction 34:10, which defines it as "a persistent belief, resulting from illness or disorder, in the existence or non-existence of something which is contrary to all evidence." CJI–Civ. 4th 34:10.

The structure and wording of Jury Instruction 34:9 preserves the discrete nature of these two tests for sound mind. The Instruction employs the use of the word "or" in brackets and sets off each test from the other by enclosing them each in brackets to clearly present the tests as independent. *See* CJI–Civ. 4th 34:9. In addition, note two of the "Notes on Use" following Instruction 34:9 states that one should "use whichever parenthesized and bracketed *portions* of the instruction are appropriate in light of the evidence in the case." *Id.* at n. 2 (emphasis added). This language indicates that either or both tests may be applicable to a particular will and more than one portion may apply to any given case. A plain reading of the Instruction, and particularly the use of the word "or," leads to the conclusion that, while exclusive, an objector to a will may challenge a testator's capacity based on both or either of these two tests.

### E. Probate Court Decision

Petitioners argue that the trial court erred with respect to its analysis of the *Cunningham* and the Insane Delusion tests. They contend that because this case involves insane delusions, the insane delusion test should have been exclusively applied. By extension, they argue that the *Cunningham* test should not have been applied at all. Based upon this logic, Petitioners argue that the trial court erred by: (1) applying both the *Cunningham* and the insane delusion tests in a case which involves only insane delusions; and (2) merging the *Cunningham* and the insane delusion tests.

■ Upon reviewing the decision of the probate court, we hold that the court correctly applied these two exclusive tests for testamentary capacity to find that the decedent was of sound mind at the time he executed his holographic will. The court found that the decedent had used alcohol and cocaine for several years prior to his death, had used alcohol and cocaine between March 17 and 19, suffered from mood swings, and worried excessively about threats against his and his dog's life. Despite these adverse findings, the court found that the decedent was of sound mind.

First, the court applied the *Cunningham* test and found that the decedent: (1) could index the major categories of the property comprising his estate; (2) knew his home and rental addresses; and (3) identified the devisee by name and provided her current address. The court noted that the will was "legible, logical in content, and reasonably set[ ] out [the decedent's] intent." In addition, the probate court considered the testimony of handwriting experts that indicated that at the time the decedent wrote the will, he was in command of his motor skills and his handwriting was unremarkable when compared to other exemplars. Based upon these factors, the trial court found that the decedent met the *Cunningham* test for sound mind.

■ Then, the probate court applied the insane delusion test to hold that although the decedent was suffering from insane delusions at the time he executed his will, "[his] insane delusions did not affect or influence the disposition of property made in the will." *Cf. In re Haywood's Estate*, 240 P.2d at 1033 (finding that a testator's hallucination of a head-

less wolf was not related to the making of the will). In so finding, the probate court considered the decedent's delusions regarding listening devices in his home and car and assassination plots against himself and his dog. In addition, the court weighed the testimony of numerous expert witnesses regarding the decedent's handwriting, his mental state near the time he executed the will, and the impact of his drug and alcohol use on his mental faculties. Further, the court considered testimony from several persons who stated that the decedent was not close to Petitioners, had infrequent contact with them, indicated to friends that he believed his father was irresponsible with money, disliked his sister's husband, and that his relationship with his brother was distant. *Cf. id.* (holding no insane delusion where testator disliked his son and thought he was a drunkard). In fact, the decedent had not made provisions for either Breeden Sr. or Connell in his earlier 1991 will. *Cf. In re Estate of Hayes,* 55 Colo. 340, 351, 135 P. 449, 453 (1913) ("upon question of mental capacity ... it is of special importance to note that [two years earlier, the testator] executed a will which was quite similar in the disposition"). As such, the probate court concluded that the insane delusions from which the decedent suffered did not materially affect or influence the disposition made in the holographic will.[11]

The Petitioners also contend that the trial court erred by "merging" the *Cunningham* and insane delusion tests, and point for support to the probate court's statement that the "[o]bjectors did not prove by a preponderance of the evidence that [the decedent's insane delusions] caused [him] to misapprehend the nature of his property, the identities of or his relationship with objectors, or the manner in which he wished to dispose of his property at the time the will was written." Our decision that the probate court correctly applied both tests for sound mind,

by implication, holds that the court did not incorrectly merge the two tests. Although, at times, the probate court merged language from the *Cunningham* and insane delusion tests, the decision as a whole indicates that the court thoroughly analyzed all of the evidence presented and applied each of the tests to find that the decedent was of sound mind.

In sum, the probate court order reflects that the court thoroughly considered all of the evidence presented by the parties and concluded that (1) the testator met the *Cunningham* test for sound mind and (2) the insane delusions from which the decedent was suffering did not materially affect or influence his testamentary disposition.

## III. PROBATE COURT'S DENIAL OF PETITIONERS' MOTION TO DISMISS BREEDEN SR. AND CONNELL

Petitioners contend that the probate court erred when it denied their motion to dismiss Breeden Sr.[12] and Connell as parties so that they could testify to conversations with the decedent arguably barred by the Dead Man's Statute. Petitioners argue that the probate court erred because neither Breeden Sr. nor Connell had a disqualifying direct interest to justify an invocation of the Dead Man's Statute. We now hold that the probate court did not err when it denied Petitioners' motion to dismiss two of the three named parties because the Dead Man's Statute bars their testimony as parties to the suit, and therefore, dismissing them as parties on the first day of the hearing would have resulted in unfair surprise and potential prejudice to Respondent.

### A. The Dead Man's Statute

■ Under section 13–90–101, 5 C.R.S. (1999), all persons with an interest in a cause of action are presumed competent to testify.

---

11. Although the probate court did not specifically use the phrase "materially affect or influence" in its decision, we find, from our review of the court order, that the probate court applied this standard.

12. As noted above, Breeden Sr. passed away during the pendency of the appeal proceedings. As such, this issue as applied to him is moot. *See*

*Van Schaack Holdings v. Fulenwider,* 798 P.2d 424, 426–27 (Colo.1990) (holding an issue moot where judgment would have no practical legal effect upon the existing controversy). However, for ease of comprehension, we have chosen to refer to both Breeden Sr. and Connell in analyzing the probate court's denial of Petitioners' motion to dismiss these two parties.

*See Patterson v. Pitoniak,* 173 Colo. 454, 457, 480 P.2d 579, 580 (1971). However, this general rule of competency is limited by a number of exceptions, including section 13–90–102, 5 C.R.S. (1999), known as the "Dead Man's Statute." The Dead Man's Statute is a less limiting codification of the common law rule that excluded as incompetent the testimony of all parties and all persons who stood to gain or lose by the outcome of a case. *See Wise v. Hillman,* 625 P.2d 364, 366 (Colo. 1981). The policy underlying the Dead Man's Statute is to guard against perjury by living interested witnesses when deceased persons cannot refute the testimony, thus protecting estates against unjust claims. *See Coon v. Berger,* 41 Colo.App. 358, 360, 588 P.2d 386, 388 (1978), *aff'd,* 199 Colo. 133, 606 P.2d 68 (1980); *Wise,* 625 P.2d at 366 (stating that the "purpose [of the Dead Man's Statute] is to promote equal justice between the parties"). *See generally* Herbert E. Tucker, *Colorado Dead Man's Statute: Time for Repeal or Reform?,* Colo. Law., Jan. 2000, at 45.

The Dead Man's Statute states:

> No party to any civil action, suit, or proceeding *or* person directly interested in the event thereof shall be allowed to testify therein of such person's own motion or in such person's own behalf ... when any adverse party sues or defends as the ... heir, legatee, or devisee of any deceased person....

§ 13–90–102(1), 5 C.R.S. (1999) (emphasis added).

■ We have interpreted this statute to hold that a potential witness is disqualified if, at the time of the proceedings, he is a party to the suit,[13] or he will gain or lose by the direct legal operation of the judgment,

and his testimony is being offered against an heir, legatee, devisee, or other person listed in the statute. *See In re Eder's Estate,* 94 Colo. 173, 180, 29 P.2d 631, 634 (1934) ("the statute contemplates *either* a party *or* one who has a direct interest") (emphasis added); *see also Wise,* 625 P.2d at 366 (stating that "parties and other interested persons are ... barred from testifying"). A contest of a probate falls within the statute because the purpose of the suit is to divest legatees and devisees of all rights in the estate of the testator. *See In re Shapter's Estate,* 35 Colo. at 578, 85 P. at 688.

In the present case, Petitioners Breeden Sr. and Connell were parties to the suit;[14] accordingly, their testimony was barred by application of the Dead Man's Statute.

### B. The Probate Court Did Not Err When It Denied Petitioners' Motion to Dismiss Breeden Sr. and Connell

A petition for formal probate of the decedent's will was filed on April 5, 1996. On June 3, 1996, Petitioners filed an objection to petition for formal probate. On September 3, 1996, the first day of the probate hearing, Petitioners filed a motion to dismiss Breeden Sr. and Connell as parties to the suit. The trial court denied the motion. In denying the motion, the probate court stated three reasons for its decision: (1) the motion was filed on the first day of the hearing; (2) the parties would be barred from testifying under the Dead Man's Statute regardless; and (3) having identified themselves as beneficiaries and having objected to the probate of the decedent's will, the parties should not be permitted to disclaim their interest.[15]

The probate court's denial of the motion to dismiss filed by Petitioners Breeden Sr. and

---

13. There are a few exceptions to the general prohibition against parties testifying, such as when the party offering the testimony is a nominal party who has no real interest in the outcome of the proceedings. *See generally Risbry v. Swan,* 124 Colo. 567, 577–78, 239 P.2d 600, 606 (1951) (stating that although administrator of estate is a necessary party to the action, he is not a party to the issue and has no personal interest in the result of the controversy); *David v. Powder Mountain Ranch,* 656 P.2d 716, 718–19 (Colo. App.1982) (holding that in a quiet title action, where all parties who have an interest in a property must be named, fact that all those named as defendants might be necessary parties does not

make them parties to the issue and thus preclude their testimony under the Dead Man's Statute).

14. We do not reach the issue of whether Breeden Sr. or Connell are interested persons pursuant to the Dead Man's Statute.

15. The probate judge stated:

> On the motion to dismiss that was filed this morning by Mr. Bosworth on behalf of Vic E. Breeden, Sr., ... and on behalf of Holly B. Connell, Mr. Bosworth, I think that the case that Mr. Sterling distributed to us this morning, *In re Estate of Gardner,* [31 Colo.App. 361,

Connell is subject to an abuse of discretion review. *Cf. Draper v. School Dist. No. 1,* 175 Colo. 216, 218, 486 P.2d 1048, 1049 (1971) (denial of motion for joinder of a party not necessary to the litigation will be overturned only if it amounts to an abuse of discretion). *See generally Tillery v. District Court,* 692 P.2d 1079, 1085 (Colo.1984) (holding that although the standard of review is abuse of discretion, a plaintiff's motion to dismiss the action without prejudice should be granted unless it will result in legal prejudice to the defendant).

We hold that the probate court did not abuse its discretion when it denied Petitioners' motion to dismiss. Despite having sufficient time to prepare for the probate hearing, Petitioners chose to wait until the day of the hearing to file a motion to dismiss two of the three named parties to the suit.[16] This motion was a surprise to both the court and opposing counsel. As such, the trial court correctly noted that if the motion were to be granted the result would be unfair surprise and potential prejudice. *See generally Todd v. Bear Valley Village Apts.,* 980 P.2d 973, 979 (Colo.1999).

Accordingly, we hold that the probate court did not abuse its discretion when it denied Respondents' motion to dismiss Breeden Sr. and Connell as parties. Because Breeden Sr. and Connell were parties, the probate court correctly excluded their testimony regarding conversations with the decedent pursuant to the Dead Man's Statute.

## IV. CONCLUSION

We hold that the probate court correctly applied the two exclusive tests for testamen-

tary capacity to find that the testator, Spicer Breeden, was of sound mind at the time he executed the holographic will. Additionally, we hold that the probate court did not abuse its discretion when it denied Petitioners' motion to dismiss Breeden Sr. and Connell as parties, thus precluding their testimony as parties under the Dead Man's Statute. Accordingly, we affirm the decision of the court of appeals upholding the probate court's ruling that the decedent was of sound mind and upholding the probate court's denial of Petitioners' motion to dismiss Breeden Sr. and Connell.

Justice BENDER does not participate.

505 P.2d 50 (1972)] is helpful on this point and it's consistent with the Court's analysis of your motion, which is that parties ought not to be allowed on the day of trial or from the witness box to disavow their interest in the estate in order to get out from under the application of the Dead Man's Statute.

There's an additional reason ... that even if Mr. Breeden, Sr. and Holly B. Connell were permitted to be dismissed at this point ... they still retain their status as ... heirs ... who ... would have taken if there had been no will....

I also note ... the pleading which brought the issue which we're facing this morning before the Court which was filed ... on behalf of Vic E. Breeden [and] Holly B. Connell ...

[who you indicate] are beneficiaries under a will, and for those reasons you asked their objection to the probate, which I'm being asked to grant this morning, be heard by the Court and that brought the matter before the Court. Accordingly, I'm going to deny the motion to dismiss these individuals from the case.

Tr. of Hr'g at 25–26.

**16.** In addition, Petitioners did not identify Breeden Sr. or Connell as testifying witnesses until August 29, 1996, when they filed a trial witness list two working days prior to the hearing.