ESSEX COUNTY ORPHANS COURT.

In the matter of the probate of a paper-writing purporting to be the last will and testament and codicil of ELIZA C. BISHOP, deceased.

[Decided December 20th, 1922.]

On caveat.

*Mr. Harry V. Osborne* and *Mr. Abram H. Cornish,* for the proponent.

*Mr. L. Edward Herrmann* and *Mr. Elmer E. Wigg,* for the caveator.

CAFFREY, J.

Eliza Catherine Bishop died on the 9th of April, 1922, leaving a will and testatment dated the 9th day of December, 1914, and a codicil to that will, dated July 12th, 1919, which ratified and confirmed the will, except as to the changes made in the codicil.

The validity of this will and testament are challenged by Catherine I. Ward, her niece, on the ground that the testatrix lacked the testamentary capacity requisite to the making of a valid will and testament. At the time of the making of the will Mrs. Bishop was about seventy-eight years old.

There was no suggestion of undue influence at the hearings, nor is there any evidence that would justify such a contention.

This matter took several days to try and much testimony was given bearing upon the testatrix's competency to make a will, both at the time of the execution of the will and the making of the codicil. In fact, great latitude was allowed to the parties concerned in introducing testimony that might throw some light upon the mentality of the testatrix, and the testimony discloses events concerning the testatrix from a

time antecedent to the making of the will up to a short time before her death, in April, 1922.

. Despite the volume of testimony in this matter (a minute reference to which would serve no purpose in this memorandum) it might be generally said that most of the caveator's evidence relates to the personal habits of the testatrix, and from the evidence it might be concluded that the testatrix was, at times, vain and self-centered, and enjoyed flattering references to herself, and was very much given up to relating incidents of her girlhood days, concerning her attendance at boarding school and her flirtations at choir. There is testimony, too, that she was unclean, both in habits of dress and manners when at the table, and would often appear partly dressed, and would ignore requests that she make herself presentable, all of which, however, is not inconsistent with the habits and attributes of a person of a sound mind. There is, too, evidence in the case that during the period when her conduct and manners were marked by these eccentricities, she took an interest in her household affairs to the extent of directing her servants, and supervised some business matters, in conjunction with William F. Jones, as to the payment of certain bills incident to the running of the house and repairs about it.

The evidence shows that prior to the drawing of the will by Vice-Chancellor Church he was requested by Mrs. Bishop to prepare a will, and pursuant to her instructions he made some notes, and from these notes the will was drawn. At the time of the execution of the will Doctor Case, the testatrix's family physician, was present and acted as a witness, and before he acted as a witness Mr. Church inquired of him if the testatrix was capable of making her will, and Doctor Case replied that she was. The deposition of Doctor Case seemingly contradicts this. However, the value of his deposition, with reference to her mental state, may be discounted, because plainly he predicates his theory of the testatrix's incompetency upon his notion of how a will should be drawn with reference to her benefactions.

Essex County Orphans Court—In re Bishop.

The testimony shows that prior to the making of the will the testatrix made a gift of a mortgage to William F. Jones, her servant, and from time to time she spoke of William as being very faithful, and from Jones' testimony and the testimony of other witnesses in the case, Mrs. Bishop had often made mention of Jones' faithfulness. There is evidence to show that Mrs. Bishop had him in mind as an object of her bounty.

The evidence shows that the testatrix took an active interest in the work of the Baptist Home, and for many years did service on the board of managers. This institution is a beneficiary under her will.

It is significant to note, with reference to the testatrix's competency, that after the will was prepared by Vice-Chancellor Church the seventh paragraph of the will was changed, prior to its execution, by the testatrix, because she observed a typographical error in writing the name of one of the beneficiaries.

Then, too, in the twelfth paragraph there is a further notation changing the typewritten words so as to conform with her intention.

The testimony is replete with instances of Mrs. Bishop's interest and participation in her business affairs. The drawing of checks, the examination of property before investment, and the selection and designing of a monument for her husband's grave, are striking illustrations.

Taking the evidence in its entirety, I am satisfied that the testatrix had sufficient testamentary capacity to execute her will at the time of the execution of the will and codicil. Therefore, I will dismiss the caveat and direct that the will and codicil be admitted to probate, the question of counsel fees to be taken up on application.