No. 16,706.

GEHM *v.* BROWN.
(245 P. [2d] 865)

Decided June 2, 1952.   Rehearing denied June 23, 1952.

Mr. Leo W. Rector, Mr. E. J. Brittain, for plaintiff in error.

Mr. C. R. Monson, Mr. Robert H. Gleason, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the court.

Myra B. Horten, to whom we hereinafter refer as decedent or testatrix, a woman about 70 years of age, died January 31, 1949 leaving a will dated January 21, 1948, which instrument was filed for probate by Lloyd L. Brown, hereinafter designated as proponent or by name, in the county court of Routt county, Colorado.

Decedent's estate consisted of personalty valued at about $1,000; real estate estimated to be worth $10,000, with rents aggregating $2,400. By the will, $1,375 in specific cash legacies were made to relatives of decedent and organizations in which she apparently had an interest, together with ten bequests of specific items of personal property. The residuary estate, together with income from real property, was devised and bequeathed to proponent, who was named as executor.

Grace Gehm, an heir and aunt of testatrix, hereinafter mentioned as caveatrix, or by name, a nonresident of Colorado, had actual notice of the probate proceeding and was summoned by publication in accordance with law. According to the record, she sent her son, Harry L. Gehm, to Colorado to take appropriate action to contest the will offered by proponent. In his own name, Harry L. Gehm, also a legatee under the will, in apt time filed a caveat alleging mental incapacity of the testatrix, and

that she was "the subject of undue influence and fraud upon the part of some one or more people at the time of the execution of the will." Proponent denied these allegations. After hearing in the county court on the issues thus joined, the caveat was dismissed and the will admitted to probate and record on May 6, 1949.

In December, 1949 Grace Gehm, acting through her son, Harry L. Gehm, filed in the county court a petition to vacate the order of probate, and to declare the will null and void, alleging as grounds therefor that the will dated January 21, 1948 was not the last will of decedent; that she had at a later date executed another will which could not be found; that the will admitted to probate was obtained by undue influence and fraud of Lloyd L. Brown; that said Brown had drawn the will; that said testatrix was not of sound and disposing mind and memory at the time she executed the will in question. To this petition proponent filed an answer denying the affirmative matters set forth, admitting, however, that he had drafted the will. This petition, after hearing, was denied by the county court and caveatrix appealed the cause to the district court, where, after hearing, a like order was entered. We are asked to review this order denying the petition to vacate the order of probate.

A certified copy of the county court record and a transcript of the evidence offered by proponent regarding the execution of the will, as well as the evidence introduced in the county court on behalf of caveatrix, was before the trial court. Counsel for caveatrix asked for a jury trial on the issues involved, advising the trial court he had no other or further evidence to offer. Proponent's counsel insisted that the evidence thus presented was insufficient to warrant submission of the issues to a jury, and the trial judge declared that if a jury were called and no further evidence was adduced on behalf of caveatrix, he would be obliged to direct a

verdict in favor of proponent of the will, and it was so ordered.

The testimony of the subscribing witnesses (the only evidence offered by proponent) while technically sufficient to warrant admission of the will to probate in the absence of a contest, discloses marked informality connected with the execution of the will.

Lowell G. Shearer, one of the subscribing witnesses, testified as follows: "Q. Now, will you tell the court the circumstances of signing that Proponent's Exhibit 'A' as a witness? A. As I remember, Mrs. Horten was in the office when Mr. Brown— Q. That is Lloyd Brown? A. Yes, Mr. Brown asked me to come into his office, stating that Mrs. Horten had made a will and asked if I would sign as a witness to her signature. Mrs. Horten was in the office with me. Q. And who else was there at that time? A. Mr. Harsh—he also asked Mr. Harsh about it. Q. Donald L. Harsh? A. Yes, sir. Q. And he told you in the presence of Mrs. Horten that this was Mrs. Horten's will and that she wanted you to sign as witness to her will, is that the substance of what was said? A. Yes. Q. And that was in the presence of Mrs. Horten, yourself, Donald L. Harsh and Mr. Brown? A. Yes, sir."

On cross-examination the following question was propounded to the witness, Shearer: "Q. But you couldn't say absolutely that she asked you to sign the will? A. Not positively no."

The other subscribing witness, Donald L. Harsh, testified in part as follows: "Q. Now, do you remember what was said with reference to its being her will and her request for you to sign as a witness to the will? A. Not for sure. Lloyd Brown came in and motioned for me to come on in and when I got in, if I remember, he said that Mrs. Horten had a will and would like for Lowell and I to sign it."

On cross-examination Mr. Harsh testified: "Q. Did she have anything to say at the time that you witnessed

this will at all, did any conversation take place? A. Oh, well we was kinda talking there—I don't remember any special thing that was said when I came in there. Lloyd asked me if I knew Mrs. Horten and I said, 'Yes,' and she nodded and Lowell said something about asking me something about—said she wanted Lowell and I to witness her signature on the will and as I remember we signed it at that time and she signed it. I don't remember—"

Nowhere in the record does it appear that the will was either read by the testatrix, or that it was read to her. Proponent did the talking and apparently testatrix said little or nothing on this occasion.

The record completely fails to show that decedent made a subsequent will, and caveatrix offered no evidence which tended to show that decedent was of unsound mind when the will was executed.

Caveatrix offered testimony which showed that proponent was a long-time friend of decedent, engaged in the real-estate business; that he had drawn the will in question; was present when it was executed; secured the subscribing witnesses, and that he retained the will in his possession until after decedent's death. It was admitted that proponent was not related to decedent and that on several occasions he had transacted business for her. It also was shown that in 1939 proponent drafted another will for decedent which she executed. In this will caveatrix was named as one of the residuary legatees and devisees and proponent was named as executor thereof.

In the instant case the basis of the petition to revoke the order of probate attempted to be proved was alleged undue influence and fraud on the part of proponent, resulting in the execution of the will.

Counsel for caveatrix contend that under the facts disclosed a presumption of undue influence arises, and that the burden of proof was upon proponent to show

that there was no undue influence or fraud which induced the execution of the will.

It is true that a testator is under no legal obligation to divide his property among his relatives, or to prefer one relative over another. The very right to make a will presupposes a disposition of his property in a manner different from that provided by law. *Aquilini v. Chamblin*, 94 Colo. 367, 30 P. (2d) 325; *Davis v. Davis*, 64 Colo. 62, 170 Pac. 208.

Mr. Justice Campbell, speaking for this court in *Snodgrass v. Smith*, 42 Colo. 60, 94 Pac. 312, said: "As has already been observed, there is no direct testimony that, at any time, any undue influence either existed or was exerted by proponent, and the existence of an opportunity therefor creates no presumption against the will. * * * The claim by contestant is that this undue influence is shown from the facts that proponent drew the will and wrote herself in as a legatee; that she was the friend, nurse and business partner of testatrix, who was very sick at the time; that her legacy was a detriment to the interests of the sole heir; and in the absence of direct proof the will had been read to or by her, or that she knew its contents before she signed it, undue influence was established, and the will was, therefore, void." In the Snodgrass case the trial court, under the facts thus presented, directed a verdict in favor of the contestant. This court reversed that ruling, stating: "It is sufficient for the purpose of this case to say that there was evidence, in addition to the testimony of the subscribing witnesses, which, if believed by the jury, would uphold a verdict that the testatrix knew the contents of the will, and acted of her own free will in making it, it being conceded that she had sufficient mental capacity at the time she signed it. The evidence upon which contestant relies to show undue influence or ignorance of contents consisting, at most, only of alleged suspicious circumstances, and proponent's testimony being what we have just stated, the court should have submitted to

the jury, under appropriate instructions, the controverted questions for their finding."

In *St. Leger's Appeal*, 34 Conn. 434, 91 Am. Dec. 735, is the following: "The rule that undue influence in respect to a legacy is to be presumed, when the relation of attorney and client subsists between the testator and the legatee, and the will is drawn by the latter, is well established, and was recognized in the charge of the court. But we have been referred to no authority, and know of none, which sustains or recognizes the claim of the appellants, nor upon principle can such intervention or caution be required as matter of law. The presumption is one of *fact*—a badge of fraud, (for undue influence is a species of fraud,)—and, like other presumptions of fact, may be rebutted by any evidence which tends to show, and satisfies the jury, that in the particular case, it is untrue. It is not that the *mere relation* necessarily induces or exerts an undue influence, as the request implies, (for all legacies by clients to their attorneys are not presumptively induced by undue influence,) but because drawing the will presents an opportunity and a temptation, which, together with the personal friendship and confidence and influence of the relation, justify suspicion and the requirement from the legatee of satisfactory evidence that the opportunity was not embraced and the influence was not exerted."

In *In re Bishop's Will*, 96 N.J. Eq. 595, 125 Atl. 384, it was said: "The law requires an honest and satisfactory explanation of the circumstances that raise the presumption of undue influence to overcome it." Hence, the burden of proof does not shift to proponent, but it is his responsibility to make a satisfactory explanation.

In *Wunderlich v. Buerger*, 287 Ill. 440, 122 N.E. 827, it was held that where the attorney who prepared the will benefited by it, and had for some years previous been adviser to the testatrix and to her late husband, the presumption of undue influence did not arise from the fiduciary relation, but from the fact that the one

who prepared the will benefited by it. In this case the court aptly said: "The strength of the presumption and the amount of proof required to overcome it must depend upon the circumstances of each case."

It is true proponent was not a licensed attorney. Nevertheless he was engaged, at least in this instance, in doing legal work, which service this court recently held to be the practice of law. *People ex rel. v. Newer,* 125 Colo. 303, 242 P. (2d) 615.

It was held in *Daniel v. Hill,* 52 Ala. 430, that where a will is written, or procured to be written, by the person who is the principal beneficiary under it, and who stands in a confidential relation to the testator, favorable to the exercise of undue influence, the presumption is against the instrument, and the beneficiary must satisfy the conscience of the court that the testator had knowledge of the contents of the will, and voluntarily executed it.

■ The generally accepted view is that the mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator, and does not cast upon the beneficiary the burden of disproving undue influence. Those consequences follow only when the beneficiary has been actively concerned in some way with the preparation or execution of the will.

■ Here the proponent drew the will, secured the subscribing witnesses, and retained the will in his possession from the day of its execution until after decedent's death. Under such circumstances it was incumbent on him to introduce evidence showing that decedent was aware of the contents of the will and rebut the presumption of undue influence.

We conclude the trial judge erred in refusing to submit the case for trial to a jury as requested by caveatrix, and in holding that the case as made by caveatrix required him to dismiss the petition to revoke the order of

probate. For the reasons assigned the judgment is reversed and the cause remanded to the trial court for further proceedings consistent with the views herein expressed.