due and becoming due under the real estate contract into the registry of the court pendente lite is hereby granted.

I am of the opinion that this is the type of case that would justify the court in advancing it on the trial calendar out of chronological order so that the defendants could not be inordinately damaged by the loss of the use of the money, plus costs of litigation, in the event that the plaintiff is not successful on the trial of the case. Such a suggestion would be favorably entertained by the court upon a motion by counsel.

In the Matter of the ESTATE of Hans Johan PEDERSEN, Deceased.

No. 3619–KA.

District Court, Alaska. First Division, Ketchikan.

Dec. 6, 1956.

C. L. Cloudy, of Ziegler, Ziegler & Cloudy, Ketchikan, for proponent.

Floyd O. Davidson, Ketchikan, for contestants.

KELLY, District Judge.

This is an appeal from the Probate Court of Alaska, Ketchikan Precinct; from an order revoking the admission of the purported will involved herein to probate, and was tried de novo in this court.

The facts show that Hans Johan Pedersen, a resident of Ketchikan, disappeared on or about October 14, 1951, while en route to Seattle in company with one Henry Smith in a small boat which the evidence shows to be of somewhat unseaworthy character.

Upon affidavit dated May 29, 1952, of Peter Smith, a brother of the said Henry Smith, the U. S. Commissioner for the Precinct of Ketchikan, First Division of Alaska, commenced administration of the estate of Hans Johan Pedersen.

The file in the Probate Court shows that the U. S. Commissioner, acting under authority of Chapter 11, Sec. 61–11–2, A.C.L.A., on the 5th day of June, 1952, took charge of the estate of Hans Pedersen according to law. An appraisal in accordance with these proceedings valued the property of the deceased at $730, and by order dated June 12, 1952, under provisions of Chapter 11, Sec. 61–11–1, A.C.L.A.1949, the U. S. Commissioner as ex officio Probate Judge, determined the value of the estate to be less than $1,000 and subject to administration by the U. S. Commissioner under the provisions of said Act. On the 13th day of August, 1952, Albert Munson Hagmoe, acting as agent for Ray Copeland, filed a creditor's claim "on account of money loaned and merchandise sold and delivered, $602.62."

A letter dated June 5, 1953, was received by the U. S. Commissioner from Edward A. Merdes, Assistant Attorney General, advising that a George E. Mathieu, administrator of the estate of Hans Pedersen in Seattle, Washington, had written requesting that assets of this estate be forwarded there. On the 5th of June, 1953, Harry Koetz, Pennock Island, a neighbor of the deceased, made affidavit that the deceased lived next door to him on Pennock Island. A further letter dated June 11th to the U. S. Commissioner from Mr. Merdes indicated that Mr. Pedersen's estate in Seattle consists of cash in the amount of $4,585.47. The

estate then had a value of more than $1,000, whereupon an order appointing Robert L. Jernberg, of Ketchikan, administrator was entered on the 19th day of August, 1953.

Up to this time Hagmoe, who was aware of the probation of the small estate and who had filed a claim therein on behalf of his brother-in-law Copeland, owner of the Shamrock Bar, in sufficient amount to wipe out any residue in the small estate, had not mentioned the alleged will. He now appeared and filed a petition dated October 1, 1953, for the probate of the disputed instrument; whereupon Mr. Jernberg resigned as administrator and Albert Munson Hagmoe was appointed executor by order of the Probate Judge on October 19, 1953, and as such executor received a check in the sum of $3,935.22, the proceeds of the estate of Hans Pedersen as administered in King County, Seattle, Washington. Although no date appears on the receipt for the check, it was apparently enclosed in a letter dated January 15, 1954, from the Seattle attorney.

A petition dated January 26, 1954, to set aside the will and for a decree declaring decedent intestate was filed on behalf of Emma Pedersen and Bertha Walstad, sisters of the deceased Hans Pedersen, who reside in Oslo and Rjukan, Norway, respectively. A citation was issued to the said Albert Munson Hagmoe by K. M. Davenport, U. S. Commissioner and ex officio Probate Judge, for a hearing to be held on February 26, 1954. On June 7, 1955, attorney for the heirs filed a motion asking for an order requiring Hagmoe either to surrender the moneys of the estate or to furnish sufficient bond, and on the 9th day of June, 1955, order was entered that the moneys of said estate be deposited with the court not later than June 20, 1955.

On July 25, 1955, upon petition of Hagmoe, an order was entered declaring the said Pedersen to be dead under Chapter 89, S.L.A.1953. On October 14, 1955, the U. S. Commissioner and Probate Judge entered an order admititng to probate what purported to be the last will and testament

of Hans Johan Pedersen, the document which is in controversy herein.

On September 26, 1955, Albert Munson Hagmoe filed another petition for the probate of the will of said deceased, and on the 14th day of October, 1955, an order admitting the will to probate and appointing Albert Munson Hagmoe as executor was signed by O. M. Lien, U. S. Commissioner and ex officio Probate Judge. However, on a hearing of petition by contestants, held October 21, 1955, the said O. M. Lien entered an order revoking the probate of the will. It is from this order that the appeal has been taken.

At the hearing held in this court on November 20, 1956, the testimony reveals that the deceased frequented the Shamrock Bar, owned by Ray Copeland, a brother-in-law of Albert Munson Hagmoe, beneficiary named in the will, and it was shown that the deceased was a hard-drinking man and was often in a state of intoxication at the Shamrock Bar. The proof of claim filed on behalf of Ray Copeland by Albert M. Hagmoe on the 13th day of August, 1952, makes claim against the estate on account of money loaned and merchandise sold and delivered to the deceased Hans Pedersen, in the sum of $602.62. Testimony shows that said Ray Copeland extended credit to the deceased for his liquor in a somewhat generous amount. The deceased's brother had recently died in Seattle and the purpose of the deceased's ill-fated trip to that city was to settle up his brother's estate from which he expected a considerable inheritance.

It was shown that Hagmoe discussed with the deceased the debt owed to the Shamrock Bar and advised Pedersen that before he left for Seattle he should make some provision to provide for the payment thereof and that Hagmoe then drew up the purported will, and this was witnessed by Hagmoe's brother-in-law Copeland, and Copeland's wife.

The deceased and Smith thereafter departed in this small boat and at least the deceased was in a very drunken condition when they sailed.

It was shown that Hagmoe had on several occasions advised the deceased Hans Pedersen on personal matters and on one occasion had aided him in having the boundaries of his homestead properly defined, acting as a friend of the deceased without compensation in negotiations between the surveyors, who were staying at Hagmoe's hotel, and the deceased.

Contestants' Exhibit One is a letter dated September 24, 1951, to the attorney in Seattle who was handling his brother's estate. This letter was written by Hagmoe and signed personally by Hans Pedersen, the deceased.

Hagmoe testified that he had mislaid the will and that he did not discover it until two years later, when he filed the same. It seems significant that at the time he filed the Copeland claim he made no mention of the alleged will then, nor at any other time until it appeared that the estate was enhanced by some $4,000 derived from the brother's estate through probate proceeding on behalf of deceased in Seattle. After an administrator (Jernberg) was appointed to administer, he suddenly found the will and filed the petition for its probate.

There seems to be little question but that the deceased had special confidence in Hagmoe in that he discussed his problems with him and solicited Hagmoe's help in their solution. Hagmoe wrote letters for the deceased's signature, and Hagmoe's brother-in-law Copeland, owner of the Shamrock Bar where Hagmoe worked, extended deceased generous credit for his liquor.

Hagmoe advised the deceased to take steps to protect Copeland against loss because of the credit extended, and the disputed document was the result. There is no other purpose shown for the deceased's frequent visits to the Shamrock Bar except for the purpose for which the Shamrock Bar existed and where deceased often was seen in an intoxicated condition. In fact there is no testimony that he was seen there in any other condition, except that of the

proponent and the Copelands, who claim he was not intoxicated the day the purported will was drawn.

However, it seems to this Court that it is highly probable he was in this condition at the time he signed the disputed instrument. Close examination of his signature and a comparison of it with the signature on the letter shows it to be highly unsteady—far more so than the signature on the letter; also, the word "to" in the last line of this document is printed directly above a comma and is of a darker ink and appears to have been added after the document was first written. These can be seen by an ordinary person and no opinion from a handwriting expert is necessary for this purpose.

The very nature of this so-called will is such as to arouse suspicion, as well as the place and manner of its drafting, the purported reason for drawing it, the witnesses and their relationship to the scrivener, the condition in which the deceased was usually found at this establishment, the characteristics of the purported signature of the deceased to the document, the large liquor bill it is claimed deceased was permitted to charge, the drafting of a so-called will to protect the liquor bill claimed to be due the brother-in-law of the scrivener, the misplacement of the document for two years—all these facts and circumstances tend mightly to strain the credulity of this Court.

It seems to this Court significant that decedent had a brother who had just recently died and whose estate was being probated in Seattle and from whose estate the deceased was to receive a considerable inheritance. This the proponent Hagmoe was well aware of, as he wrote the letter, Exhibit One, for the deceased in regard thereto. All that would have been necessary to protect the debt to Copeland would have been a promissory note, a written acknowledgment thereof, or an assignment or mortgage of the assets of the said deceased.

There was no reason why the deceased should will his estate to Hagmoe; to protect Copeland's claim surely is not

enough in and of itself. Hagmoe certainly was unjustly enriched by this document to the exclusion of the lawful heirs, the two sisters in Norway.

There is no presumption of undue influence raised solely from the relationship of trust and confidence which existed between the deceased and proponent Hagmoe in and of itself alone. There is no presumption of undue influence raised solely from the fact that the opportunity existed for the exercise of undue influence in and of itself alone. There is no presumption of undue influence raised solely from the fact that the proponent drew the purported will in and of itself alone and there is no presumption of undue influence raised solely from the fact that the proponent profited unduly in and of itself alone, but when all the above elements exist, as they do herein, taken together they raise a presumption of undue influence. This presumption has not been satisfactorily overcome.

As between the deceased and the proponent Hagmoe, the relationship of trust and confidence existed, the opportunity for exercise of undue influence was present, the proponent profited unduly thereby, and he also drew the will.

From the evidence and the circumstances surrounding the relationship of the parties and the drafting of the document, there is substantial basis of fact and inference that undue influence may be presumed. In re Estate of Lances, 216 Cal. 397, 14 P.2d 768; In re Brown's Estate, 165 Or. 575, 108 P.2d 775; In re Bucher's Estate, 56 Cal. App.2d 135; 132 P.2d 257; Gehm v. Brown, 125 Colo. 555, 245 P.2d 865. This presumption has not been rebutted. Therefore the purported will will be denied probate and this Court finds that the deceased died intestate, and this matter will be remanded to the Probate Court for such further proceedings as are required to complete the probate of the estate of Hans Pedersen as an intestate.