**In the Matter of the ESTATE OF Robert Ramon ROMERO, Deceased.**

**Barbara A. Romero and Robert Ross Romero, Claimants–Appellants,**

**v.**

**Dolores G. Vasquez, Personal Representative–Appellee.**

**No. 04CA0013.**

Colorado Court of Appeals, Div. I.

June 30, 2005.

Certiorari Denied Jan. 9, 2006.

Rebecca L. Shandrick, Denver, Colorado, for Claimants–Appellants.

Mona S. Goodwin, Denver, Colorado, for Personal Representative–Appellee.

HAWTHORNE, J.

In this formal testacy proceeding as to the estate of Robert Ramon Romero (decedent), decedent's children, Barbara A. Romero and Robert Ross Romero (contestants), appeal the probate court's judgment denying their petition for adjudication of intestacy. Decedent's sister, Dolores G. Vasquez, as devisee, opposed the petition. We affirm.

This case involves a contested probate of a formal will executed by decedent. The will named decedent's mother as personal representative and his sister as the successor personal representative. Decedent devised a gift of $500 to each of his children and left the remainder of his estate to his mother and sister in equal shares, with a provision that if either his mother or sister predeceased him, the remaining beneficiary would take the entire remainder. Because decedent's mother predeceased him, his sister was left as the sole beneficiary of the residuary estate.

Contestants filed objections, claiming that decedent did not have the testamentary capacity to execute a will. In addition, they claimed that the will was the product of undue influence. In support of their assertions, they relied primarily on the uncontested facts that decedent suffered from mental illness and that he had been a protected person under a Veterans Administration (VA) guardianship over his financial affairs.

A hearing was held on the petition for formal probate. Contestants presented, inter alia, expert witness testimony from the physician who treated decedent for schizophrenia. While this physician testified that decedent suffered from auditory hallucinations, the physician was unable to connect them with execution of decedent's will and, moreover, saw decedent for only a few minutes on three occasions during the eighteen months prior to the signing of the will. The probate court accordingly discounted his testimony.

Instead, the probate court credited the testimony of the attorney who prepared the will, because it found him to be the only individual with personal knowledge of decedent's testamentary capacity when the will was executed. The attorney testified that he met with decedent on four separate occasions, including one visit to decedent's home. He testified that although decedent's mother transported decedent to and from the attorney's office, she was present neither during his conversations with decedent nor during the actual execution of the will, but remained in the office waiting area. He further testified that decedent expressed his desire to leave his entire estate to his mother and his sister because of his minimal contact with his children and in return for all the love and support he had received from his mother and sister over the years. The attorney also testified that it was only upon his suggestion that decedent made a small bequest to his children to demonstrate that his exclusion of them as primary beneficiaries was intentional. He further testified that he had "no doubt in his mind" when the will was executed that decedent fully understood the consequences of his action.

After considering all the evidence, the probate court found that contestants did not prove by a preponderance of the evidence that decedent was not of sound mind when he executed his will. The court held that neither the evidence of mental illness nor the mere existence of a VA guardianship was sufficient, in and of itself, to prove lack of testamentary capacity. It further found that decedent's sister had provided ample evidence that the will was a voluntary act and was not the product of undue influence. Accordingly, it granted the petition to admit the will to formal probate and to appoint decedent's sister as the personal representative of the estate in unsupervised administration.

### I.

Contestants first contend that the probate court erred in failing to conclude that the will was invalid because decedent lacked testamentary capacity. We disagree.

A person has testamentary capacity if he or she is an "individual eighteen or more years of age who is of sound mind." Section 15-11-501, C.R.S.2004. A testator's soundness of mind may be evaluated under either the test set forth in *Cunningham v. Stender*, 127 Colo. 293, 255 P.2d 977 (1953), or the insane delusion test. *See Breeden v. Stone*, 992 P.2d 1167 (Colo.2000).

Under the *Cunningham* test, a person has testamentary capacity when the person (1) understands the nature of the act, (2) knows the extent of his or her property, (3) understands the proposed testamentary disposition, and (4) knows the natural objects of his or her bounty, and (5) the will represents the person's wishes. *Cunningham v. Stender, supra.* An individual lacks testamentary capacity under the insane delusion test when he or she suffers from an insane delusion that materially affects the disposition of the will. *Breeden v. Stone, supra.*

Once a proponent of a will has offered prima facie proof that the will was duly executed, any contestant has the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation by a preponderance of

the evidence. Section 15–12–407, C.R.S. 2004; *Breeden, supra,* 992 P.2d at 1170.

### A.

Contestants maintain that the facts demonstrated that decedent did not know the extent of his property and therefore lacked testamentary capacity under that prong of the *Cunningham* test. We are not persuaded.

■ A finding of fact will not be set aside on appeal unless it is clearly erroneous. C.R.C.P. 52; *In re Estate of Gallavan,* 89 P.3d 521, 523 (Colo.App.2004) (probate court's findings under *Cunningham* and the insane delusion test will not be set aside if there is evidence in the record to support them). Evaluation of the credibility of witnesses, including expert witnesses, is a matter solely within the fact finding province of the trial court, and we will not reweigh testimony or reevaluate evidence on appeal. *See CF & I Steel, L.P. v. Air Pollution Control Div.,* 77 P.3d 933, 937 (Colo.App.2003).

The appointment of a conservator or guardian is not a determination of testamentary incapacity of the protected person. Section 15–14–409(4), C.R.S.2004.

There is scant Colorado case law detailing what specific knowledge is required for a testator to be deemed to know the extent of his or her property. However, the cases which touch upon this issue, including *Cunningham* itself, indicate that it is sufficient that a testator comprehend the "kind and character of his [or her] property" or understand, generally, the nature and extent of the property to be bequeathed. *Cunningham, supra,* 127 Colo. at 300, 255 P.2d at 981; *see also Columbia Sav. & Loan Ass'n v. Carpenter,* 33 Colo.App. 360, 368, 521 P.2d 1299, 1303 (1974), *rev'd on other grounds sub nom. Judkins v. Carpenter,* 189 Colo. 95, 537 P.2d 737 (1975).

■ In other words, "A perfect memory is not an element of testamentary capacity. A testator may forget the existence of part of his estate ... and yet make a valid will." 1 *Page on Wills* § 12.22 (rev.2003).

■ As further stated in *Page on Wills:*

In cases in which language is used which sounds as though actual knowledge on the part of testator was requisite to testamentary capacity, the court merely means that if [the] testator possesses such knowledge, he has testamentary capacity. It is probably not intended to imply that lack of knowledge will prevent testamentary capacity.

1 *Page on Wills, supra,* § 12.22. Therefore, "[t]he fact that [the] testator believes that the residue of his estate is of little value, when it is, in fact, more than two-thirds of his estate," does not show lack of capacity. 1 *Page on Wills, supra,* § 12.22.

An ability to index the major categories of property constituting an individual's estate was found sufficient to establish testamentary capacity in *Breeden, supra,* 992 P.2d at 1173. This holding is consistent with the approach taken by courts in other jurisdictions with similar tests for testamentary capacity. *See Rich v. Rich,* 615 S.W.2d 795, 797 (Tex.Civ.App.1980) (holding that a finding of testamentary capacity does not require proof that "the testator knew the 'true value of his property'"); *Prichard v. Prichard,* 135 W.Va. 767, 772, 65 S.E.2d 65, 68 (1951)(holding that to have the capacity to make a will, the testator must know his property, but "it is not necessary that he know every item of his property or the value of his estate," and "[i]t is sufficient if he knows of what his property consists").

Here, the probate court found that decedent understood that his assets comprised the accumulation of whatever amounts were left over from his VA and social security benefits after his living expenses had been deducted. The probate court concluded that decedent's failure to know the actual amount of money in his VA account was not surprising or fatal, given that the VA's routine practice was not to inform its wards how much money they had in their VA accounts, to protect the wards from exploitation. Further, the court found that the relative size of the estate was not a motivating factor in decedent's decision to leave his estate to his mother and sister, as decedent's attorney testified that decedent's original intent was

to preclude his children from taking any of his estate at all.

Under these circumstances, we agree with the probate court that decedent's lack of knowledge of the actual value of his estate did not affect his testamentary capacity.

### B.

■ Contestants next contend that the probate court erred in concluding that decedent did not have an insane delusion regarding the amount of his estate. Specifically, they argue that decedent had an insane delusion that his estate would be minimal or nominal and that if he had realized the actual value, he would have left a larger bequest to them. We conclude there was no error.

■ An insane delusion is a persistent belief in something that has no existence in fact, which belief is adhered to in spite of all evidence to the contrary. *Breeden v. Stone, supra,* 992 P.2d at 1171. The contestant bears the burden of proving that the testator suffered from an insane delusion, that he was under such a delusion at the time of making his will, that the insane delusion materially affected the disposition made in the will, and that the will was the product of the insane delusion. *Breeden, supra,* 992 P.2d at 1171.

The evidence before the probate court was that decedent's estate was valued at approximately $90,000 when the will was executed and approximately $450,000 at decedent's death. His attorney testified that while decedent could not articulate the value of his assets, he expressed an understanding that his assets came from his VA benefits, that his VA guardian allocated him enough money to meet his personal needs and to pay for his living expenses, and that his estate would consist of the money left over in his accounts under VA supervision after his expenses were met. Moreover, his attorney testified that because he was familiar with the management of VA guardianship accounts, he did not press decedent about the value of the estate. While the attorney described decedent's account as nominal, this was his own assessment rather than a quote from decedent.

A field examiner for the VA testified that although a VA guardian is required to file an annual accounting with the court and with the VA, veterans would not usually be in a position to know the exact value of their estates because they were not furnished copies of their annual accounts. If veterans inquired, they were told they could get a copy of their accountings at the court where the documentation was filed.

The probate court concluded that it was not surprising that decedent did not know the value of his estate, given his apparent satisfaction with the money-handling arrangement and the lack of documentation as to the dollar amount of his VA account. Moreover, the probate court specifically credited the attorney's testimony that decedent was not motivated by the comparative size of the amounts passing to his children and to his mother and sister.

The probate court's findings are supported by the record, and under these circumstances, we conclude there was no error.

### C.

■ Contestants maintain that the probate court erred in finding decedent had testamentary capacity in light of the VA guardianship. Specifically, they assert that because of his VA guardianship, decedent was found unable to enter into any contracts and that as such, he had no testamentary capacity. We disagree.

In support of their argument, contestants point to a VA regulation that defines a mentally incompetent individual subject to guardianship as one who "lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353(a).

The VA regulations, however, specifically provide that "[l]ack of testamentary capacity should not be confused with ... mental incompetence." 38 C.F.R. § 3.355(c). The regulations provide that there is a general but rebuttable presumption that every testator possessed testamentary capacity and reasonable doubts should be resolved in favor of testamentary capacity. The regulations also provide a test for testamentary capacity simi-

lar to the test utilized in Colorado, including a requirement "that the testator reasonably comprehend the nature and significance of his act, that is, the subject and extent of his disposition, recognition of the object of his bounty, and appreciation of the consequence of his act, uninfluenced by any material delusion as to the property or person involved." 38 C.F.R. § 3.355(a).

Here, a VA field administrator testified that the VA rating of incompetency meant that decedent was incompetent only as to the handling of his VA disability funds and did not mean he was incapacitated as to other matters. The field administrator further testified that a veteran, even if incompetent to handle VA funds, could still enter into contracts similar to wills by naming insurance beneficiaries and that, in fact, the VA had accepted such a designation from decedent. Accordingly, the VA had found decedent to have testamentary capacity, despite his VA guardianship, under a test similar to the testamentary capacity test established in Colorado.

■ We also note that the supreme court has held "that contractual capacity and testamentary capacity are the same." *Breeden v. Stone, supra,* 992 P.2d at 1170 (citing *Hanks v. McNeil Coal Corp.,* 114 Colo. 578, 168 P.2d 256 (1946)).

Section 15–14–409(4), C.R.S.2004, specifically provides that the appointment of a conservator or the entry of another protective order is not a determination of the testamentary incapacity of the protected person. Moreover, § 28–5–219, C.R.S.2004, provides that neither the fact that a person has been rated incompetent by the VA nor the fact that a guardian has been appointed for the person shall be construed as a legal adjudication of insanity or mental incompetency. Thus, Colorado statutes explicitly state that the findings that warrant appointment of a guardian or conservator do not equate to a determination of testamentary incapacity. *In re Estate of Gallavan, supra,* 89 P.3d at 523.

Given the statutory framework and the record in this matter, we conclude that the probate court did not err in finding that decedent had testamentary capacity in spite of his VA guardianship.

II.

■ Contestants next contend that the probate court erred in failing to conclude that decedent was unduly influenced in the creation and execution of his will. Specifically, they point to decedent's mental illness and his dependence upon his mother for care. We are not persuaded.

■ Absent evidence that a beneficiary was actively concerned with the preparation and execution of the will, he or she will not be presumed to have exercised undue influence over the testator. *Gehm v. Brown,* 125 Colo. 555, 562, 245 P.2d 865, 869 (1952).

Here, the evidence established that the will was executed after decedent had moved to an assisted living facility and was living independently of his mother. Moreover, as discussed above, the probate court credited testimony that decedent's mother was not present when decedent discussed the will with his attorney or when he executed it. Finally, the probate court noted that when the will was executed, decedent was not restricted from receiving visitors.

Under these circumstances, the record supports the probate court's finding that the will was not the product of undue influence.

The judgment is affirmed.

Judge MARQUEZ and Judge GRAHAM concur.