25CA0784 Estate of Carrillo 03-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0784
City and County of Denver Probate Court No. 24PR191
Honorable Elizabeth D. Leith, Judge

In re the Estate of Idene Theresa Carrillo, deceased.

Randolph A. Carrillo,

Appellant,

v.

Nevaeh Carrillo,

Appellee.

ORDER AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

Randolph A. Carrillo, Pro Se

Meurer & Potter, P.C., Matthew P. Zanotelli, Greenwood Village, Colorado, for Appellee

¶ 1      Randolph A. Carrillo (Randolph) appeals the probate court's order admitting the will of his deceased mother, Idene Theresa Carrillo (Idene), into probate; vacating his appointment as the personal representative (PR) of her estate; and appointing Idene's daughter, Nevaeh Carrillo (Nevaeh), as PR of the estate.[1]  He contends that the probate court erred by (1) improperly admitting the will; (2) failing to evaluate Idene's testamentary capacity and his allegations that she was unduly influenced; (3) excluding evidence and admitting hearsay; (4) improperly disregarding expert and lay witness testimony; and (5) acting with bias and prejudice.  We disagree with all his contentions and, therefore, affirm.

## I.    Background

¶ 2      Idene died in March 2024 and was survived by one son, Randolph, who was appointed PR of her estate the following month.  Weeks later, Nevaeh, Randolph's daughter, filed her own petition seeking to replace Randolph as PR on grounds that Idene's purported will disinherited Randolph and nominated her the PR.  In response, Randolph contended that the will presented by Nevaeh

---

[1] Because the Carrillos share the same last name, we refer to them by their first names.  We intend no disrespect in doing so.

was not authentic or was procured through undue influence, and that his mother lacked testamentary capacity. After the court held a two-day evidentiary hearing, it rejected Randolph's claims, admitted the will into probate, and appointed Nevaeh PR.

## II. Admission of the Will

¶ 3 Randolph claims the court erred because it did not apply the Probate Code's statutory requirements before admitting the will. We disagree.

## A. Preservation

¶ 4 Nevaeh asserts that Randolph's contention is not preserved based on cites he relies on from the transcript. We agree that Randolph's citations do not necessarily demonstrate he preserved this issue. But the central dispute at the evidentiary hearing was Randolph's objection to the probate court admitting the will; therefore, we conclude the issue is preserved. *See Sebastian Holdings, Inc. v. Johansson*, 2025 COA 60, ¶ 28 n.8. (an issue is preserved for appellate review if the court has been presented with an opportunity to rule on the issue).

¶ 5 We note, however, that our review is impeded because the record on appeal is incomplete — it contains only excerpts from the

2

transcripts from the court's two-day evidentiary hearing. *See* C.A.R. 10(d)(3) (the appellant has a responsibility to "include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal"). In the absence of complete transcripts, we must presume that the missing portions of the record support the probate court's findings and conclusions. *See In re Marriage of Beatty*, 2012 COA 71, ¶ 15; *In re Life Ins. Tr. Agreement of Julius F. Seeman, Dated Apr. 19, 1962*, 841 P.2d 403, 406 (Colo. App. 1992).

## B. Standard of Review

¶ 6 In all actions tried upon the facts without a jury, a court's judgment "must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order." *Rocky Mountain Health Maint. Org., Inc. v. Colo. Dep't of Health Care Pol'y & Fin.*, 54 P.3d 913, 918 (Colo. App. 2001); C.R.C.P. 52. A judgment is reversible under Rule 52 "only when the findings themselves are inadequate and do not indicate the basis for the [probate] court's decision." *Rocky Mountain Health*, 54 P.3d at 918 (quoting *Uptime Corp. v. Colo. Rsch. Corp.*, 420 P.2d 232, 235 (Colo. 1966)).

¶ 7    When a probate court considers evidence extrinsic to the will to render a ruling, we review whether its decision was "clearly erroneous or completely unsupported by the evidence." *In re Estate of Jenkins*, 904 P.2d 1316, 1320 (Colo. 1995); *see also In re Estate of Gallavan*, 89 P.3d 521, 523 (Colo. App. 2004) (an appellate court does not set aside a court's findings of fact unless clearly erroneous). But we review de novo the probate court's legal conclusions, including its interpretation of the probate statutes. *In re Estate of Colby*, 2021 COA 31, ¶ 12.

### C.    Statutory Requirements

¶ 8    A will is valid under section 15-11-502(1), C.R.S. 2025, when three requirements are met: "(1) it must be in writing; (2) it must bear the testator's signature or be signed in the testator's name; and (3) it must also bear the signatures of at least two persons who witnessed either the testator's signature or the testator's acknowledgment of the signature." *In re Estate of Wiltfong*, 148 P.3d 465, 467 (Colo. App. 2006). The probate court properly found that these requirements were satisfied, noting that Idene had signed the will, it had been witnessed by two individuals, and it was in writing.

¶ 9    Nonetheless, Randolph contends that the probate court erred by admitting the will in violation of section 15-11-502(3). Specifically, he contends that there are irregularities with the will, including that it (1) was not notarized, even though testimony supported that his mother wanted it to be notarized; (2) lacked other indicia of verification; (3) contained a blank page and missing page numbers; (4) lacked a schedule of disinheritance; (5) lacked a chain of custody; and (6) was typed by a beneficiary.

¶ 10    Section 15-11-502(3) says, "Intent that the document constitute[s] the testator's will can be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator's handwriting."  This provision allows the probate court to do exactly what it did here: hear and review extrinsic evidence to determine whether the will submitted by Nevaeh was indeed Idene's intended will.  Therefore, we do not see how the probate court erred by applying this provision.

¶ 11    Randolph makes no argument that we can discern suggesting that the three statutory requirements in section 15-11-502(1) were not satisfied.  Instead, his arguments relate to his claim that his mother was unduly influenced to write the will, arguments we will

address below.  The statute does not require that the testator's signature be notarized, nor does it necessitate page numbers.  The probate court noted that the will was "problematic, but also consistent with a [w]ill drafted by a person who is unfamiliar with the statutory requirements."  The court acknowledged the lack of a notarized signature and disinheritance schedule.  But even with these deficiencies, its finding that the will was valid was based on the "totality of the evidence" contained in the record.

¶ 12    Accordingly, we conclude the probate court did not err when it admitted the will into probate because it met the requisite statutory requirements under section 15-11-502(1).[2]

D.    Undue Influence and Testamentary Capacity Claim

¶ 13    Next, Randolph contends that the probate court erred by concluding that Idene did not lack testamentary capacity and was

---

[2] For the first time in his reply brief, Randolph argues that the probate court erred by allowing Nevaeh and her witnesses to testify in violation of the dead man's statute, § 13-90-102(1), C.R.S. 2025.  That statute generally prohibits living witnesses interested in the outcome of a case to testify about conversations they had with a decedent.  But we do not consider arguments raised on appeal for the first time in a reply brief and, therefore, decline to address this issue further.  *See Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009).

not unduly influenced. He also claims that the probate court violated C.R.C.P. 52 because it failed to properly consider this argument in its order. We disagree with both contentions.

### 1. Applicable Law

¶ 14    If the validity of a will is contested, the proponent has "the burden of presenting prima facie evidence to show the will was duly executed." *Wiltfong*, 148 P.3d at 467. The person contesting the will's validity has "the burden of proving by a preponderance of the evidence lack of testamentary capacity, undue influence, fraud, or the like." *Id.*; *accord In re Estate of Romero*, 126 P.3d 228, 230-31 (Colo. App. 2005).

¶ 15    A person lacks testamentary capacity "if she does not understand (1) the nature of her act; (2) the extent of her property; (3) the proposed testamentary disposition; (4) the natural objects of her bounty; and (5) that the will represents her wishes." *In re Estate of Everhart*, 2021 COA 63, ¶ 39.

¶ 16    Undue influence is "words or conduct, or both, which, at the time of the making of a will, (1) deprived the testator of her free choice and (2) caused the testator to make at least part of the will differently than she otherwise would have." *Id.* at ¶ 33; CJI-Civ.

34:14 (2025). When a will contestant establishes that the decedent had a fiduciary or confidential relationship with the grantee and the grantee was actively involved in the drafting of the document, a rebuttable presumption of undue influence arises. *Krueger v. Ary*, 205 P.3d 1150, 1154-55 (Colo. 2009). To rebut the presumption, a grantee must present "some evidence" that there was not undue influence. *Id.* at 1153.

## 2. Analysis

¶ 17 The probate court's findings that Idene was not unduly influenced and did not lack testamentary capacity are supported by the record.

### a. Testamentary Capacity

¶ 18 During the evidentiary hearing, witnesses testified about Idene's drinking habits — with conflicting opinions about whether she was an alcoholic or had a drinking problem — and whether she may have been depressed during the time that her will was drafted. Witness testimony also established that her cause of death was hypertension with complications of alcohol abuse. At some point

during the hearing, Randolph implied that Idene was under undue influence when the will was drafted.[3]

¶ 19    As a result of this testimony, Randolph contends that the probate court erred by not delving deeper into whether Idene lacked capacity to execute the will. He relies on *In re Estate of Romero*, 126 P.3d at 231, indicating that the division in that case purportedly emphasized that "mere conclusory assertions of capacity are insufficient where there is evidence of diminished mental health or substance abuse." We do not see such language in that case. Regardless, the division held that, despite the decedent being appointed a guardian for his veterans' disability benefits, the probate court did not err in finding that he had testamentary capacity to execute the will admitted to probate because he had a general idea of his assets and understood the nature of the oversight of his benefits. *Id.* at 232-33; *see also Breeden v. Stone*, 992 P.2d 1167, 1173 (Colo. 2000) (the probate court correctly found that the decedent was of sound mind at the time he executed his

---

[3] Because we were only provided excerpts of the record, it is difficult to discern exactly when this argument was advanced. The probate court addressed this issue in its order, so we assume Randolph's claim is preserved.

will despite findings that he had used alcohol and cocaine for several years, suffered from mood swings, and worried excessively about threats against his and his dog's lives). Thus, the court's ruling is consistent with similar cases finding that a decedent's drinking or depression, without more, does not necessarily prove a person lacks testamentary capacity.

¶ 20 As the party contesting the validity of the will, Randolph had the burden to present evidence that his mother's daily drinking and depression diminished her capacity. *Wiltfong*, 148 P.3d at 467. He has not pointed to any evidence, besides his own testimony, on this fact. In supporting its finding that Idene was competent, the probate court relied on witness testimony it found credible that Idene had driven herself to the location where the will was executed, she had asked the drafter of the will to help her write up the document three years before it was executed, and she did not want to leave anything to Randolph because the two were estranged. It is left to the trier of fact — not us — to assess witness credibility and to weigh and resolve conflicting evidence. *See Jenkins*, 904 P.2d at 1320; *see also People in Interest of Ramsey*, 2023 COA 95, ¶ 38 (we defer to a probate court's weight and credibility determinations).

¶ 21    Therefore, we discern no error in the probate court's determination that Idene was competent to execute the will.

### b.    Undue Influence

¶ 22    Randolph largely relies on the evidence that his mother drank and had depression to support that she was unduly influenced to draft the will and that the probate court should, again, have delved more deeply into those issues.  But, as we discussed above, we already addressed and rejected his arguments on this point.

¶ 23    He also contends that the probate court misapplied section 15-12-407, C.R.S. 2025, because he had established a prima facie case that his mother lacked testamentary capacity or was unduly influenced; thus, the burden shifted to Nevaeh to defeat his claim. That provision says,

> In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and heirship.  Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue.  Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation.  Parties have the ultimate burden of persuasion as to matters

with respect to which they have the initial burden of proof.

*Id.* As discussed above, Nevaeh presented evidence that the will established the statutory requirements for a will.

¶ 24 Even assuming the evidence of Idene's drinking and depression established a prima facie case of diminished capacity, thus shifting the burden to Nevaeh to show otherwise, we discern no error. Nevaeh presented "some evidence" that Idene was competent and was not unduly influenced by proffering testimony from a number of Idene's friends and family members about Idene's intent to draft a will consistent with the one presented. *See Krueger*, 205 P.3d at 1154-55. Based on this record, we cannot say that the court's findings of fact are clearly erroneous or that the court misapplied section 15-12-407.

### III. Evidentiary Rulings

¶ 25 Randolph argues that the probate court erred by (1) not admitting all his exhibits; and (2) rejecting his expert and lay witness testimony. We disagree with both contentions.

## A. Standard of Review

¶ 26   We review a district court's rulings regarding the admissibility of evidence for an abuse of discretion. *Hall v. Frankel*, 190 P.3d 852, 858 (Colo. App. 2008). A court abuses its discretion when its decision "is manifestly arbitrary, unreasonable, or unfair," or it misapplies the law. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008).

## B. Analysis

### 1. Exhibits

¶ 27   When Randolph tried to admit his seventy-five exhibits wholesale, the court required him to offer individual exhibits for admission. As a result, Randolph claims that the probate court erred by ignoring his evidence packet "without ruling on admissibility."

¶ 28   But it appears that the probate court considered admissibility for the one exhibit that Randolph offered to admit into evidence. Randolph claims that the probate court disregarded other affidavits and exhibits he offered. But Randolph did not offer another exhibit from the evidence packet in the excerpts of the transcript included in the record on appeal. He also claims that the court improperly

13

relied on hearsay, but he points to no specific testimony at issue in which he contemporaneously objected. Given we do not have any other evidentiary ruling from the probate court relating to his exhibits, and he has failed to point to specific objections, we must presume the court's rulings were not in error. *See Seeman*, 841 P.2d at 406.

¶ 29 Thus, we conclude the probate court did not abuse its discretion. *See Hall*, 190 P.3d at 858.

## 2. Witness Testimony

¶ 30 During the hearing, Randolph called two handwriting expert witnesses and two lay witnesses to support his claims that Idene's will was invalid, that she lacked testamentary capacity when it was executed, and that it was a product of undue influence. Both of Randolph's handwriting experts testified that they believed Idene did not author her signatures on the proffered will. The lay witnesses testified on a range of issues generally supporting Randolph's claims, including Idene's relationship with her family, her wishes about her will, and her mental health and drinking habits.

¶ 31    As we said above, the trier of fact has the duty to assess witness credibility and weigh the evidence. *Jenkins*, 904 P.2d at 1320; *see Ramsey*, ¶ 38. Even though Randolph acknowledges this principle, he still disagrees with the court's conclusion and contends that it failed to make sufficient findings. But the court only needs to provide findings sufficient for our appellate review. *See People v. Beauvais*, 2017 CO 34, ¶¶ 27-44 (reversing the court of appeals decision that remanded the case to the district court to make credibility findings by holding that a district court need not make such express findings); *see also Wells v. Del Norte Sch. Dist. C-7*, 753 P.2d 770, 772 (Colo. App. 1987) (holding that administrative hearing officer was "not . . . required to explain how and why he resolved any credibility issues"). And we have already concluded that the court explained why it credited and rejected some of the lay witness testimony.

¶ 32    As to his claim that the probate court improperly rejected his experts' testimony, a trier of fact can likewise accept all, some, or none of an expert's testimony, even if that testimony is uncontroverted. *Kim v. Grover C. Coors Tr.*, 179 P.3d 86, 97 (Colo. App. 2007). Although Randolph may disagree with the court's

determination, we discern nothing in the probate court's order that suggests that it abused its discretion by rejecting his expert witnesses' testimony. Thus, this contention fails.

## IV. Bias and Prejudice Claim

¶ 33 Finally, Randolph asserts that the probate court was improperly biased against him because it (1) ruled against him when he tried to object to a witness testifying; (2) made findings in its order that he was "angry" and referred to his criminal background; and (3) ruled that Nevaeh's witnesses were credible while his were not. We disagree.

### A. Preservation

¶ 34 Randolph does not delineate whether his judicial bias claim is based on actual bias or on an appearance of impropriety. Litigants can waive a claim of judicial bias based on an appearance of impropriety, while a claim of actual bias cannot be waived. *People v. Jennings*, 2021 COA 112, ¶¶ 19, 21, 26. A litigant's failure to file a motion under C.R.C.P. 97 seeking recusal of a judge due to an appearance of impropriety may constitute a waiver of such an argument. *Richardson v. People*, 2020 CO 46, ¶ 33. We see no motion for recusal in the record, nor has Randolph pointed us to

16

one.  Thus, we decline to address this claim further.  *See In re Marriage of Zebedee*, 778 P.2d 694, 699 (Colo. App. 1988) (declining to address unpreserved allegations of judicial bias).

¶ 35    But we will address his claim to determine whether the court demonstrated actual bias.

## B.    Applicable Law

¶ 36    The party asserting that a judge was biased "must establish that the judge had a substantial bent of mind against [the party]." *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988); *see also People in Interest of A.P.*, 2022 CO 24, ¶ 28 (actual bias "exists when, in all probability, a judge will be unable to deal fairly with a party; it focuses on the judge's subjective motivations").  Actual bias must be established clearly in the record, as mere speculative statements and conclusions are insufficient.  *See Drake*, 748 P.2d at 1249.

## C.    Analysis

¶ 37    We reject Randolph's claim of actual bias for three reasons.

¶ 38    First, a judge's adverse rulings, without more, do not establish actual bias.  *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 57 ("Unless accompanied by an attitude of hostility or ill will toward a party, a ruling by a judge on a legal issue is insufficient to show

17

bias that requires disqualification." (citing *Brewster v. Dist. Ct.*, 811 P.2d 812, 814 (Colo. 1991))); *see also Saucerman v. Saucerman*, 461 P.2d 18, 22 (Colo. 1969) (holding that "rulings of a judge," even if "erroneous, numerous and continuous, are not sufficient in themselves to show bias or prejudice.").

¶ 39    Second, Randolph's reliance on *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), is misplaced. In that case, the United States Supreme Court held that a judge should have recused from a matter because there was actual bias: the judge received campaign contributions for the judge's election from one of the parties in the litigation that "eclipsed the total amount spent by all [the judge's] other supporters and exceeded by 300% the amount spent by [the judge's] campaign committee." *Id.* at 884. The Court also noted that actual bias might exist, necessitating a judge to recuse, "where a judge had no pecuniary interest in the case but was challenged because of a conflict arising from [the judge's] participation in an earlier proceeding." *Id.* at 880. Randolph has not directed us to any evidence suggesting either circumstance was present to support actual bias.

¶ 40 Finally, to the extent the court relied on or made findings about Randolph's criminal background and said he was "angry," we conclude these findings were relevant as part of the probate court's duty to assess all the evidence presented at the hearing and decide the disputed issue based on the totality of the evidence. "Evidence is relevant when it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Bertoia v. Galaxy Mgmt. Co.*, 2025 COA 55, ¶ 31 (quoting CRE 401). We read the court's order to refer to his criminal background and anger as reasons to explain his estrangement from his mother, making it more probable than not, as the court found, that Idene disinherited Randolph in her will. Therefore, we do not perceive that the court relied on Randolph's criminal background for an improper reason demonstrating actual bias. Consequently, his claim fails.

## V. Conclusion

¶ 41 We affirm the probate court's order.

JUDGE PAWAR and JUDGE GOMEZ concur.

19